In re Virginia Funk **HAARDT**, Trustee for Virginia Anne Haardt, a minor, Debtor.

Bankruptcy No. 84–03546G.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 20, 1986.

Arsen Kashkashian, Jr., Kashkashian Associates, Philadelphia, Pa., for debtor, Virginia Funk Haardt, Trustee for Virginia Anne Haardt, a minor.

Barry D. Kleban, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for objector, Philadelphia Sav. Fund Soc.

Joseph G. Feldman, Philadelphia, Pa., for objector, Donald E. Funk.

Heywood Eric Becker, New Hope, Pa., objector.

## OPINION AND ORDER

BRUCE FOX, Bankruptcy Judge:

Debtor Virginia Funk Haardt filed a petition for relief under chapter 11 of the Bankruptcy Code on October 16, 1984. Eighteen months later, April 16, 1986, Debtor filed a plan of reorganization. Three creditors, the Philadelphia Savings Fund Society ("PSFS"), Donald E. Funk ("Funk") and Heywood Eric Becker ("Becker"), filed objections to confirmation of the plan. On October 2, 1986, the Court conducted an evidentiary hearing to consider confirmation of the plan.

For the reasons set forth below, the Court will deny confirmation of Debtor's plan of reorganization.[1]

### I.

According to the Disclosure Statement, approved by the Court on August 12, 1986, debtor is seeking to reorganize in her capacity as trustee of trust in favor of her seventeen (17) year old daughter, Virginia Anne Haardt. Three (3) pieces of real estate have served as assets of the trust: (1) Village 2, Smoke Rise 3, Section 3, Lot 15

---

1. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052.

("Village 2"); (2) 82 South Main Street and (3) 136 South Main Street.[2] All of the real estate is located in New Hope, Pennsylvania. At the time this case was filed, all three (3) properties were held subject to various secured claims. The status of each property is summarized below.

### Village 2

Village 2 was subject to two (2) mortgages held by PSFS. There was also a $7,000.00 lien arising from a judgment entered January 26, 1983 in No. 83–607 (C.P. Bucks) in favor of objector Funk, see 42 Pa.C.S. § 4303.

On November 28, 1984, this Court entered an Order granting PSFS relief from the automatic stay, 11 U.S.C. § 362. The Court's Order granted PSFS authority to execute against Village 2 on any judgment obtained in pending state court proceedings. The Order also provided that it shall survive and not be modified by any Order confirming debtor's Chapter 11 Plan.[3]

On May 10, 1985, Village 2 was sold at sheriff's sale pursuant to a $92,261.08 judgment in PSFS' favor. PSFS purchased the property at the sale for sheriff's costs. The Court of Common Pleas, Bucks County, denied Debtor's petition excepting to the sale and that decision is presently on appeal. *Philadelphia Savings Fund Society v. Haardt*, 49 Bucks Co.L.Rep. 164 (C.P.1986), *appeal docketed*, No. 01152 PHL 86 (Pa.Super.). PSFS asserts that the sheriff's sale did not satisfy the indebtedness and that it holds an unsecured claim in excess of $24,000.00.

### 82 South Main Street

82 South Main Street was also subject to secured claims at the time this case was filed: (a) a first mortgage in favor of Abington Federal Savings and Loan ("Abington") which was subsequently assigned to Objector Funk; (b) a second mortgage in

favor of Donald B. McCoy which was also subsequently assigned to Objector Funk; and (c) the $7,000.00 lien arising from the judgment entered in No. 83–607 (C.P. Bucks) in favor of Objector Funk.

On February 15, 1985, this court entered an Order granting Abington (then first mortgagee) relief from the automatic stay and authority to proceed with foreclosure and sale of 82 South Main Street. The property was sold at sheriff's sale on January 10, 1986. Debtor filed exceptions to the sheriff's sale. The exceptions were denied by the Court of Common Pleas on April 9, 1986. The Court is advised that Debtor has appealed the denial of the exceptions. Objector Funk was the sheriff's sale purchaser. He has since sold the property to a partnership of which Objector Becker is a member.

### 136 South Main Street

Like the other two (2) properties, 136 South Main Street was subject to secured claims when this case was filed: (a) a mortgage in favor of William Penn Savings and Loan Association ("William Penn") which was subsequently assigned to Objector Funk; (b) a second mortgage in favor of Abington (involving the same indebtedness which was secured by the first mortgage on 82 South Main Street), subsequently assigned to Objector Funk; and (c) the same $7,000.00 judgment which encumbers the other two (2) properties.

On November 21, 1984, this Court entered an Order granting William Penn relief from the automatic stay. To prevent a sheriff's sale scheduled for February 1985, Objector Funk refinanced the William Penn mortgage at Debtor's request paying William Penn over $331,000.00. The refinancing resulted in the assignment of the William Penn mortgage to Funk mentioned in the preceding paragraph. In connection with this refinancing, Debtor agreed, in late January 1985, to attempt to refinance the property again within forty-five (45)

---

**2.** The record does not disclose whether there is any trust property other than the real estate.

**3.** Debtor appealed this Order but the appeal was dismissed by the District Court for lack of prosecution by Order entered February 12, 1986.

days and failing that to sell all three (3) New Hope properties at fair market value. Debtor also agreed to assign all leases and rents with respect to 136 South Main Street to Funk. Debtor has not refinanced the debt, sold the properties or assigned the 136 South Main Street leases and rents to Funk, thus breaching her January 1985 agreement with Funk. Also, Debtor has failed to make over $18,000.00 in payments on real estate taxes on 136 South Main Street which have fallen due since 1983 and has not maintained fire insurance on the property.

## II.

Debtor's proposed plan of reorganization is quite simple. It provides that "[a]s soon as feasible after the entry of an Order of Confirmation herein the Debtor shall obtain refinancing" of the secured claims on the three (3) New Hope properties and then "will satisfy 100 percent of the creditors' claims with the money obtained from refinancing." The proposed plan further provides that if the refinancing is not completed within one hundred twenty (120) days of the effective date, Debtor "will liquidate her real estate to the extent necessary to pay outstanding claims from the proceeds." The proposed plan represents that the market value of the real estate exceeds the value of the claims, thus insuring that one hundred per cent (100%) of all claims will be satisfied.

The requirements which must be met for confirmation of Debtor's proposed plan are set forth in 11 U.S.C. § 1129. The main thrust of all three (3) objections filed to the proposed plan is that the plan has not been proposed in good faith, *see* 11 U.S.C. § 1129(a)(3) and that the plan is not feasible, *see* 11 U.S.C. § 1129(a)(11).[4]

---

**4.** While not altogether clear, PSFS may also be asserting that the plan fails to satisfy 11 U.S.C. § 1129(a)(10). The Court finds it unnecessary to reach that issue.

**5.** The Court need not consider whether the plan be confirmed under § 1129(b) because Debtor

## III.

For a plan of reorganization under chapter 11 to be confirmed, all of the requirements of 11 U.S.C. § 1129 must be met. Section 1129(a) contains eleven (11) subsections. All eleven (11) subsections must be satisfied except subsection (a)(8) which provides that each class must accept the plan or be unimpaired. A plan may still be confirmed even though it fails to satisfy the requirements of subsection (a)(8) so long as the plan then satisfies the cram down standards of § 1129(b). *E.g., In re Acequia, Inc.,* 787 F.2d 1352, 1363 (9th Cir.1986); *Matter of Rochem, Ltd.,* 58 B.R. 641, 643 (Bankr.D.N.J.1985).

As explained below, this Court finds that the plan does not satisfy the requirements of § 1129(a)(1), (3), (8) and (11).[5]

### A. § 1129(a)(1).

■ Section 1129(a)(1) provides that the plan must comply with the applicable provisions of "this title." Thus, it incorporates the requirements of 11 U.S.C. § 1123(a) which sets forth the mandatory requirements of a plan of reorganization. *See In re AOV Industries,* 792 F.2d 1140 (D.C.Cir. 1986); 5 *Collier on Bankruptcy* ¶ 1129.-02[1] (15th ed. 1986).

Debtor's plan fails to "designate ... classes of claims" as required by § 1123(a)(1). Debtor's plan purports to reorganize the debts secured by three separate pieces of real estate. PSFS also asserts that it holds an unsecured claim against Debtor. Debtor's plan completely ignores the classification requirement of § 1123(a)(1). In light of the binding effect confirmation would have on the creditors, *see* 11 U.S.C. § 1141(a), this Court is not prepared to confirm a plan which fails to classify claims. The lack of classification also hinders the Court's analysis of the plan's confirmability under § 1129(a)(8) and

---

has not specifically requested confirmation under that provision. *In re S & W Enterprise,* 37 B.R. 153, 156 n. 5 (Bankr.N.D.Ill.1984). Also, since the plan does not satisfy the requirements of § 1129(a)(1), (3) and (11) it may not be confirmed under § 1129(b).

(10). For these reasons alone, the Court would deny confirmation. *See In re Barrington Oaks General Partnership,* 15 B.R. 952, 954 n. 5 (Bankr.D.Utah 1981).

**B. § 1129(a)(8).**

Section 1129(a)(8) requires that each class of claims either have accepted the plan or be unimpaired. Debtor's plan represents that the class of claims is not impaired. However, a statement by the plan proponent that a class is unimpaired does not necessarily make it so. *In re Spirited, Inc.,* 23 B.R. 1004, 1007 (Bankr.E.D.Pa. 1982). This Court is convinced that the plan does propose to impair a class of claims.

The concept of impairment is set forth in 11 U.S.C. § 1124. At the risk of some oversimplification, a class of claims is impaired unless the plan (1) leaves unaltered the holder's legal, equitable and contractual rights; (2) provides for cure of the default which gives rise to the right to accelerate the indebtedness; or (3) provides for payment in cash on the effective date of the plan equal to the allowed amount of the claim. *See* Klee, *All You Ever Wanted To Know About Cram Down Under the New Bankruptcy Code,* 53 Am.Bankr.L.J. 133, 139–40 (1979).

In this case, Debtor's theory that the claims are unimpaired is probably based on § 1124(3). However, the plan does not provide for payment of the claims "on the effective date" of the plan as required by the Code. The effective date of the plan is the date of confirmation or, at a minimum, as close as possible to the confir-

mation date. 5 *Collier on Bankruptcy, supra,* at ¶ 1124.03[7]. Debtor's plan contemplates that "as soon as feasible after" confirmation debtor will obtain refinancing with a maximum of one hundred twenty (120) days to do so. Thus, the cash payment under Debtor's plan will take place well after the effective date rendering a class of claims impaired.[6]

The Objectors are all holders of various claims that are impaired by Debtor's plan. All of the Objectors have rejected Debtor's plan. It follows then that not every class of claims which is impaired has accepted the plan.[7] Debtor has not satisfied the requirements of § 1129(a)(8).

**C. § 1129(a)(11).**

Section 1129(a)(11) contains the following requirement for confirmation:

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation of reorganization is proposed in the plan.

In essence, § 1129(a)(11) requires that the Court determine the feasibility of the plan, *i.e.,* whether it offers a reasonable prospect of success and is workable. *E.g., Matter of Huckabee Auto Co.,* 33 B.R. 141, 145 n. 2 (Bankr.M.D.Ga.1981); 5 *Collier on Bankruptcy, supra,* at ¶ 1129.02, at 1129-36.11.

The purpose of § 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than

6. In reaching this conclusion, the Court is not deciding that a plan can never have an effective date one hundred twenty (120) days after confirmation. The Court is holding that in this case, where debtor has provided no evidence regarding the value of the properties subject to the claims or the existence of an equity cushion, Debtor has not met its burden of convincing the Court that a class of claims is not impaired by a proposed cash payment which may take place one hundred twenty (120) days or even longer, after confirmation. *See In re Prudential Energy Co.,* 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986). In light of this holding, the Court need not deter-

mine whether a plan which apparently contemplates the reversal of two (2) sheriff's sale deeds and the re-vesting of title in debtor alters the claims' holders legal, equitable and contractual rights under § 1124(1).

7. The analysis is complicated somewhat by Debtor's failure to classify the claims. However, whether the various claims are viewed as a single class or as separate classes the result is the same: a class which is impaired has not accepted the plan.

the Debtor can possibly provide after confirmation. *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985); 5 *Collier on Bankruptcy, supra,* at § 1129.-02, at 1129–36.11. As one court has stated, "[a]ll that is required is that there be reasonable assurance of commercial viability." *In re Prudential Energy Co.,* 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986).

■ In the case at bar, Debtor seeks to reorganize by refinancing the debt on three (3) properties. Since the filing of this case, two (2) of the properties were sold at sheriff's sale following relief from the automatic stay. Debtor seeks to prolong an apparently hopeless situation with the promise of post-confirmation efforts to refinance. Yet, Debtor failed to come forward with any credible evidence that her plan is feasible.[8] There is no evidence in the record as to the value of the properties or Debtor's general financial situation and prospects. The Court, therefore, cannot possibly find that there is any reasonable chance that any lender will come forward to refinance the debts on the subject properties. There is no credible evidence concerning potential sources for refinancing or what steps Debtor will take to accomplish the refinancing if the Plan were confirmed. Nor is there any evidence explaining why debtor has been unable to obtain refinancing since filing this bankruptcy almost two (2) years ago or why this Court should conclude that Debtor will be able to accomplish in the next one hundred twenty (120) days what she has not been able to do in the previous two (2) years.

Moreover, Debtor has not brought to the Court's attention any authority under the Bankruptcy Code for setting aside in this case the two (2) sheriff's sales which took place after relief from the stay was granted. It may be that the only way the Debtor can regain ownership is by prevailing on appeal in state court on her exceptions to the sheriff's sale. Debtor has not produced any evidence to persuade this Court that her state court appeal has any prospect of success, much less the necessary degree of likelihood of success to warrant confirmation of her plan.[9]

In these circumstances, this Court can only conclude that it is more probable than not that confirmation of the plan would likely be followed by a liquidation or further reorganization and that the plan does not comply with § 1129(a)(11).[10] *Cf. In re Prudential Energy Co.,* 58 B.R. at 862–64 (confirmation denied where Debtors' track record bore no relation to visionary earnings projected); *In re Trail's End Lodge, Inc.,* 54 B.R. 898, 900 (Bankr.D.Vt.1985) (confirmation denied where during pendency of bankruptcy prior to confirmation hearing, Debtor demonstrated inability to sell the contemplated assets). *In re Stuart Motel, Inc.,* 8 B.R. 48 (Bankr.S.D.Fla.1980) (confirmation denied due to speculative na-

---

8. Debtor's purported refinancing committment is not credible. The document submitted does not contain the name of any lender, is unsigned, contains no committment and refers to loan terms commencing months prior to the confirmation hearing.

9. By failing to establish how title to the two (2) properties will be revested in her, Debtor has not provided adequate means for the implementation of the plan. For this reason, too, the court finds that the plan fails to comply with 11 U.S.C. § 1129(a)(1) and § 1123(a)(5). *In re Weathersfield Farms, Inc.,* 34 B.R. 435 (Bankr.D. Vt.1983).

10. Debtor's plan also provides that if Debtor does not obtain the refinancing within one hundred twenty (120) days of the effective date, "she will liquidate her real estate to the extent necessary to pay outstanding claims from the proceeds." It is doubtful that the plan's "fallback" liquidation provision in the event the proposed reorganization is unsuccessful would save the plan under the feasibility requirements of § 1129(a)(11), at least where, as in this case, the primary goal of the plan is reorganization not liquidation. Otherwise, any plan could nullify the requirements of § 1129(a)(11) by providing for liquidation in the event the reorganization fails. It is unnecessary, however, for the court to reach this issue for even the potential proposed liquidation is not feasible. Debtor cannot liquidate property she does not own in order to pay her creditors. Nor is there evidence in the record that the value of the properties is sufficient to provide for a one hundred percent (100%) satisfaction of the claims, as promised under the plan.

ture of Debtor's projection of increased income).

### D. § 1129(a)(3)

The Objectors also assert, and this Court agrees, that the plan was not proposed in good faith and therefore, does not comply with § 1129(a)(3).

The concept of "good faith", as required by 11 U.S.C. § 1129(a)(3) has been much discussed, sometimes in almost the same terms as feasibility under § 1129(a)(11). *See Matter of Jasik,* 727 F.2d 1379 (5th Cir.1984). Without question the realistic possibility of an effective reorganization is a component of "good faith." *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984). However, the provisions of 1129(a)(3) and § 1129(a)(11) differ in that good faith also includes some recognition of the plan proponent's motivation. As the Court of Appeals for the Second Circuit has noted,

> This court has defined the good faith standard in the bankruptcy context as requiring a showing the plan was proposed with "honesty and good intentions" and with "a basis for expecting that a reorganization can be effected."

*In re Koelbl,* 751 F.2d 137, 139 (2d Cir. 1984) (citations omitted).

 A plan's failure to satisfy the feasibility requirement of § 1129(a)(11) certainly does not by itself mean that the plan also fails under § 1129(a)(3). *Cf. Tennessee Publishing Co. v. American National Banking,* 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13 (1936) (honest efforts of debtor may be impractical and unfeasible). However, in this case, the totality of circumstances coalesce to convince the Court that the plan was not proposed in good faith. Most prominent among the circumstances are (1) Debtor's failure to come forward with evidence providing even a colorable basis for a finding that the plan meets the confirmation standards of § 1129 and in particular, § 1129(a)(11); (2) the fact that since 1984, Debtor has filed two other bankruptcy petitions in this Court (Nos. 84–02269G and 85–00143G under Chapters 13 and 11 re-

spectively), both of which were dismissed without generating any meaningful plan or concrete action to rehabilitate Debtor or reorganize her affairs; and (3) Debtor's failure to comply with her agreement of January 1985 with Objector Funk in which she agreed to either refinance in forty-five days or sell three (3) properties.

The Court is persuaded that Debtor's plan is only another delaying tactic to forestall the consequences of a *fait accompli* —the foreclosure and sale of two (2) of her properties. *See In re Weathersfield Farms, Inc.,* 34 B.R. 435, 439 (Bankr.D.Vt. 1983).

### IV.

For these reasons, the Court will enter an Order denying confirmation of Debtor's Plan of Reorganization.