**In re Virginia Funk HAARDT, Trustee for Virginia Anne Haardt, a Minor, Debtor.**

**Virginia Funk HAARDT, Trustee for Virginia Anne Haardt, a Minor, Plaintiff,**

**v.**

**Donald E. FUNK and Heywood Eric Becker, Defendants.**

**Bankruptcy No. 84–03546F.**

**Adv. No. 86–0792F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 2, 1987.

Arsen Kashkashian, Jr., Philadelphia, Pa., for plaintiff, Virginia Funk Haardt, trustee for Virginia Anne Haardt, a minor.

Heywood Eric Becker, New Hope, Pa., for defendants, Donald E. Funk and Heywood Eric Becker.

Virginia Funk Haardt, Philadelphia, Pa., trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

In this adversary proceeding, Heywood Eric Becker and Donald E. Funk have filed a motion for sanctions pursuant to Bankr. Rule 9011 against the debtor, Virginia Funk Haardt, and her counsel, Kashkashian & Associates ("Kashkashian"). Becker and Funk request that the court grant them in excess of $5,500.00 in attorney's fees and costs. For the reasons set forth below, I will award Becker attorney's fees in the amount of $1,000.00.[1]

### I.

The motion for sanctions arises from litigation initiated by the debtor with respect to a parcel of realty, 82 South Main Street, New Hope, PA (hereinafter "the property"), which she owned prior to her chapter 11 bankruptcy filing on October 16, 1984. After this court granted relief from the automatic stay, the property was sold at a sheriff's sale in January 1986. On July 30, 1986, the debtor filed a complaint and motions for a temporary restraining order and a preliminary injunction in this court. The debtor sought to prevent the defendants, whom she believed to be the new owners of the property, from effecting certain repairs and renovations.

The debtor's complaint alleged that the defendants were renovating property of the debtor's estate without her consent and in violation of state law. In particular, the debtor asserted that the renovations violated 71 P.S. § 562 and were contrary to building plans approved by the Pennsylvania Department of Labor and Industry. Claiming that the renovations could result in the imposition of fines and prejudice her chances of obtaining financing for her plan of reorganization, the debtor requested that an injunction be entered "until such time as the favorability of her chapter 11 plan is decided" by the court. *See* Debtor's Complaint ¶¶ 9–11.

---

**1.** This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr.

Rule 7052.

On the basis of the debtor's sworn statements, the court entered a temporary restraining order on August 4, 1986 and held a hearing on the motion for preliminary injunction one week later. On September 1, 1986, the court entered an order dissolving the injunction. In his accompanying opinion, (then) Chief Judge Goldhaber concluded that, because she had produced no evidence that she retained any ownership interest in the property, the debtor was not entitled to any relief. *In re Haardt*, 64 B.R. 420 (Bankr.E.D.Pa.1986). Similar considerations contributed to the denial of confirmation of the debtor's plan of reorganization less than two months later. *See In re Haardt*, 65 B.R. 697 (Bankr.E.D.Pa. 1986).

## II.

In their motion for sanctions, Becker and Funk focus on two representations made by the debtor in the injunction litigation: (1) that the debtor was subject to monetary penalties because the defendants were renovating the property in violation of state law and; (2) that the debtor had, at the time of the complaint, a refinancing committment from First Northeastern Mortgage Co. ("FNMC"). In support of the latter contention, the debtor submitted two documents to the court when she requested injunctive relief: (a) two undated Truth in Lending ("TILA") disclosure statements pursuant to Regulation Z, 12 C.F.R. §§ 226.1 *et seq.;* and (b) a letter from a representative of FNMC dated March 5, 1986.[2] Essentially, the defendants assert that these representations were, in fact, *mis* representations of fact and should be sanctioned under Bankr.Rule 9011.

At the hearing on the motion for sanctions, the defendants' main evidence in their case-in-chief was presented through two witnesses. The defendants first called Joseph May, a regional supervisor for the Pennsylvania Department of Labor and In-

dustry, Bureau of Occupational Safety. May testified that he visited the property in July 1986 at the debtor's request. When he visited the property, he concluded that there were no building code violations because, in his view, he had no jurisdiction over the building while it was unoccupied. Had the building been occupied at that time, there would have been violations because the renovations then underway were different from those approved by his agency in prior plans submitted by the debtor. Mr. May further stated that he specifically told the debtor and her counsel, who were both present at the inspection, that he lacked jurisdiction and that no fines could be imposed. Finally, he testified that in August 1986, revised plans were submitted by the owners of the property and those plans were approved by the agency.

The next witness was Paul Gange, the first vice president and treasurer of First Northeastern Financial Co. ("FNFC"). He explained that FNFC sent the TILA disclosure statement to the debtor in response to an oral loan application taken over the telephone in late 1985. The application was not accompanied by an application fee and FNFC never issued a loan committment to the debtor. The disclosure statement was merely intended to describe what the charges would be if the application were approved and a loan committment were to issue.

Gange also clarified the relationship between his company, FNFC, and FNMC. FNFC is a company licensed in Pennsylvania to make secondary mortgage loans. In most cases, FNFC does not use its own funds to make loans to its customers but places the loans with other companies. In November 1985, FNFC hired a loan officer named Robert Thompson. Prior to November 1985, Thompson had leased space from FNFC and operated his own company, FNMC. FNMC was not licensed to make

---

**2.** The March 5, 1986 letter states, in pertinent part:

We are pleased to offer you the enclosed committment papers on your approved mortgage loan request, which is subject to search and appraisal.

Please sign and return these committment papers to our office, as soon as possible, so that we may order your search. We will contact you upon recept [sic] of same.

secondary mortgage loans and operated exclusively as a mortgage broker. Gange testified that he understood that, after November 1985, Thompson was not to operate FNMC but was to work exclusively for FNFC. He identified Thompson's signature on the March 5, 1986 letter from FNMC to the debtor. He could not, however, offer any explanation why Thompson would have sent the letter.

The debtor testified in opposition to the motion for sanctions. She stated that she had been dealing with Thompson in attempting to obtain refinancing for three of her properties, including 82 South Main Street. In addition to the TILA disclosure statement and the March 5, 1986 letter from FNMC, she identified a letter from FNFC dated December 23, 1985. The letter was signed by an Elaine Paliaroli and stated

> We are pleased to offer you the enclosed committment papers on your approved mortgage loan request, which is subject to search and appraisal.

> Please sign and return these commitment papers to our office, as soon as possible, so that we may order your search. We will contact you upon receipt of same.

> We have also enclosed a formal application. This too is to be completed, signed and returned to our office with the commitment papers. This application is required for our files.

In his testimony, Gange had been unable to identify the signature on the December 23, 1986 letter. However, the contents of the letter are consistent with his testimony. It appears that the letter was sent by FNFC in response to the debtor's telephone inquiry and contained a TILA disclosure statement. A second disclosure statement was sent to the debtor by Thompson, on behalf of FNMC, as an enclosure with the March 5, 1986 letter.

The debtor further testified that she notified her attorney of her efforts to obtain financing. She stated that, when this adversary proceeding was filed, she believed that she still owned the property because

her petition to set aside the January 1986 sheriff's sale, though denied by the Court of Common Pleas, was pending on appeal in the Pennsylvania Superior Court.[3] She believed that as of July 1986, the sheriff had not issued a deed transferring the property. She also felt that the defendants had no permit for making renovations and that the renovations were improper.

### III.

Bankr.Rule 9011 provides:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. *The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.* If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses in-

---

**3.** The debtor admitted that the appeal has since been decided against her.

curred because of the filing the document, including a reasonable attorney's fee. (emphasis added).

■ The text of Rule 9011 tracks the language of Fed.R.Civ.P. 11, with only such modifications as are appropriate to reflect the differences between bankruptcy cases and ordinary civil actions. In providing for sanctions, Rule 9011 is intended to discourage, in bankruptcy proceedings, the same type of conduct which Fed.R.Civ.P. 11 proscribes. *See Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985).

At bottom, Rule 11 is intended to discourage filings that are " 'frivolous, legally unreasonable, or without factual foundation.' " *Lieb v Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1986), *quoting Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986). Any discussion of Rule 11 must begin with an analysis of the major amendment to the rule which was enacted in 1983. The purpose and significance of the amendment was summarized by the Ninth Circuit Court of Appeals in *Zaldivar v. City of Los Angeles*, 780 F.2d at 829:

> Prior to the 1983 amendments, Rule 11 was interpreted to require subjective bad faith by the signing attorney to warrant the imposition of sanctions. *See, e.g., Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir.1983); *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2nd Cir. 1980). This interpretation was compelled because the text of the former Rule was plainly subjective in its focus: "The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief, there is good ground to support it...." Fed.R.Civ.P. 11 (1982) (emphasis added). Moreover, under the former Rule, sanctions against the signing attorney were reserved for a "willful violation of this rule...." *Id.*

The new text represents an intentional abandonment of the subjective focus of the Rule in favor of an objective one. The certificate now tests the knowledge of the signing attorney by a "reasonableness" standard. The former require-

ment of willfulness has been deleted. "The [new] standard is one of reasonableness under the circumstances. This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." Fed. R.Civ.P. 11 advisory committee note.

The Third Circuit, too, has acknowledged that the standard for testing conduct under Rule 11, as amended, "is an objective one of reasonableness." *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535 (3d Cir.1985), *cited in Lieb*, 788 F.2d at 157. " 'Simply put, subjective good faith no longer provides the safe harbor it once did.' " *Lieb*, 788 F.2d at 157, *quoting Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985).

Rule 11's requirements are set in motion by the mandate that the attorney or the party sign every pleading, motion or other paper filed with the court. The signature certifies that the paper conforms to the requirements of the rule. The certification "is directed at the three substantive prongs of the rule; its factual basis, its legal basis, and its legitimate purpose." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 186 (1985) ("Schwarzer").

The motion for sanctions *sub judice* is based on the first prong of the rule, the requirement that the paper filed with the court be "well grounded in fact." Bankr. Rule 9011. Rule 11 requires that this belief be "formed after reasonable inquiry." *Id.* The Advisory Committee Notes state that what constitutes a reasonable inquiry may depend on several factors including: how much time for investigation was available and whether the attorney had to rely on his client for information as to the facts underlying the paper filed with the court. Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11 ("Notes of Advisory Committee").

Judge Schwarzer further observes:

> If the rule is to have meaning, [the facts obtained by the attorney in the pre-filing investigation] must consist of admissible evidence or at least be calculated to lead

to such evidence. They need not be undisputed or indisputable but they must be sufficiently substantial to support a reasonable belief in the existence of a factual basis for the paper.

Schwarzer, 104 F.R.D. at 187, At the same time, courts must be careful "to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring *what was reasonable to believe at the time the pleading, motion or other paper was submitted." Eavenson, Auchmuty & Greenwald*, 775 F.2d at 540 (emphasis in original), *quoting* Notes of Advisory Committee.

▆ The defendants' Rule 11 motion in this case is directed primarily at the debtor's and her counsel's alleged lack of a factual basis for prosecuting this adversary proceeding. The debtor's complaint and request for injunctive relief were premised, in large part, on two facts. First, the debtor alleged that the renovations to the subject property did not conform with plans filed with the state Department of Labor and Industry and, as a result, the debtor could be subject to fines. Second, the debtor represented that she was in a position to obtain financing in order to effectuate her plan of reorganization. In support of the latter representation, she submitted documentation which purported to demonstrate that she had, at least in the recent past, obtained loan committments.

The defendants argue that neither representation to the court was "well grounded in fact." I agree.

At the hearing on the instant Rule 11 motion, Mr. May, the regional supervisor of the state Department of Labor and Industry testified that he inspected the property in July 1986 at the debtor's request and that the debtor and her counsel were present at the inspection. May further testified, unequivocally, that after the inspec-

tion, he told the debtor's counsel that the Department of Labor had no jurisdiction over the building while it was unoccupied and that no fines could be levied.[4] The debtor and her counsel have not disputed Mr. May's account. Nor have they come forward with any other evidentiary matter which would have supported the allegations in their complaint.[5] In these circumstances, it is difficult to perceive any reasonable basis for the debtor's allegation.

The representation that the debtor had obtained loan committments, while perhaps presenting a closer question, also violated Rule 11—specifically, the requirement that counsel make a reasonable pre-filing inquiry. Admittedly, the documentation possessed by the debtor and her counsel (*i.e.*, the TILA disclosures, the December 23, 1985 FNFC letter and the March 5, 1986 FNMC letter) all use the term "committment." However, several considerations lead me to conclude that the debtor's counsel had a duty to make some further inquiry. The documents themselves are, at best, ambiguous in their suggestion of the existence of an actual loan committment. *Cf. In re Haardt*, 65 B.R. at 702 & n. 8 (undated, unsigned TILA statement without name of actual lender is not "credible"). Moreover, counsel was necessarily aware of the debtor's financial distress, the grant of relief from stay and the January 1986 sheriff's sale of the property. In such circumstances, it is reasonable to at least question the debtor's claims that a lending institution was prepared to extend credit to her, especially since the disclosure statements, on their face, indicated that the lender was not requiring the debtor to grant any security interest in connection with the loan. Finally, to prosecute the case under the theory espoused, counsel must have anticipated the need to produce admissible evidence of the loan committ-

---

4. Mr. May made similar averments, by way of affidavit, which were submitted to the court, without objection, for consideration in deciding on the motion for preliminary injunction.

5. Mr. May's testimony flatly contradicted paragraph 7 of the debtor's complaint, which states:

On July 26, 1986, Joseph May and Richard B. Kemp, Inspectors for the Bureau of Occupational and Industrial Safety, Pennsylvania Department of Labor and Industry informed plaintiff that the present renovation of 82 South Main Street, New Hope, PA is contrary [to] presently approved building plans and will result fines.

ments. There is no evidence that counsel made any inquiries to either FNFC or FNMC in order to locate and prepare a competent witness or otherwise obtain relevant evidence of the existence of the committment. The record discloses no action taken by counsel to verify the status of the debtor's application before the filing of the complaint and the request for injunctive relief. Had counsel made a minimal inquiry, it is probable that he would have learned, as Mr. Gange testified, that the debtor had never even filed a formal loan application, much less obtained a loan committment. Taken together, these factors lead me to conclude that it was unreasonable for counsel to rely on his client's representations and that he did not satisfy his duty of inquiry under Rule 11. *Cf. In re Bono,* 70 B.R. 339 (Bankr.E.D.N.Y.1987) (circumstances may dictate that attorney may not rely solely on client's version when corroborative sources are available).[6]

## IV.

■ Upon a finding that the duty imposed by Rule 11 has been violated, the rule provides that the "court.... shall impose upon the person who signed it a represented party, or both, an appropriate sanction," which may include reasonable expenses and attorney's fees incurred as a result of the violation In *Lieb,* the Third Circuit stated that "[t]he use of 'shall' was deliberate and carefully considered, and was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties." 788 F.2d at 157. At the same time,

[t]he court .. retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

Notes of Advisory Committee. In exercising the discretion provided in the rule, courts should consider both the compensatory and deterrent purposes of the rule.

*Lieb,* 788 F.2d at 158; Schwarzer, 104 F.R.D. at 200–01. Thus, "[i]nfluenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses...." *Lieb,* 788 F.2d at 158.

■ In this case, I conclude that an appropriate sanction is an award of $1,000.00 in favor of defendant Becker. Since I conclude that both the debtor and her counsel are blameworthy for the violation of Rule 11, their liability will be joint and several.

In reaching this result, I have taken several considerations into account. The litigation, while groundless, was neither difficult, complex, nor time-consuming. The injunction itself was dissolved by the court in less than one month. The prosecution of the Rule 11 motion involved little more than a recapitulation of the previous factual material. In my view, an award of $1,000.00 represents an approximate measure of the value of the legal work which Becker necessarily expended in representing himself in response to the litigation initiated by the debtor. I also believe that the size of the award will serve the deterrent function of Rule 11.

I am cognizant that this award is substantially less than that requested. I have reviewed the time record submission of defendant Becker, who represented himself at the initial stages of the case. He seeks compensation for his legal work at $100.00 per hour and claims he expended 54.8 hours in this matter. I note that his records do not comply with the standards set forth in *Lindy Brothers Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973), *appeal after remand,* 540 F.2d 102 (3d Cir.1976). Becker provided no basis for the court to determine the reasonableness of his hourly rate. Although he did not represent co-defendant Funk at the preliminary injunction hearing, Becker has filed this motion on behalf of both defendants. I have no reason to doubt that Becker is now representing

---

**6.** Defendant Becker also argues that the debtor and her counsel should be sanctioned on the ground that they maintained their action against him when they had reason to know that another legal entity owned the property and was the proper defendant. The record is insufficient to support this contention.

Funk. However, Becker has not provided any evidence of the terms of that representation—in particular, their fee agreement. Thus, there is nothing in the record to establish that Funk suffered any legal expenses.

Moreover, the number of hours for which Becker requests compensation is subject to substantial reduction. Some of the hours claimed are for work in opposing confirmation of the debtor's proposed plan of reorganization, which was a contested matter distinct from this adversary case. No compensation is appropriate for such work. *See In re Woerner,* 67 B.R. 685, 687 (Bankr.E.D.Pa.1986). Other hours claimed for work performed in this case were patently excessive. Rather than require additional written submissions, I consider it preferable and in the interest of justice in the circumstances of this case, to place a value on Becker's work and to attempt to finally bring this proceeding to an end. *See id. See also In re The Locke Shoppe,* 67 B.R. 74 (Bankr.E.D.Pa.1986).

An order consistent with this opinion will be entered.