### In re INTERNATIONAL MOBILE ADVERTISING CORP., Debtor.

#### Bankruptcy No. 90–11369S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 22, 1990.

this case on March 29, 1990, which was dismissed by mutual consent of the parties on June 5, 1990.

▆ We hold that the dismissal of the underlying petition by consent of the sole petitioner and the debtor extinguishes any claim under 11 U.S.C. § 303(i). Further, while we find that the elimination of § 303(i) as a basis for damages does not foreclose IMAC from pursuing sanctions against Miller and Caplan under R. 9011, we find that R. 9011 is to be applied sparingly and that there has been insufficient showings of either subjective or objective bad faith on the part of Miller or Caplan such as would justify sanctions pursuant to this Rule. Accordingly, IMAC's motion is denied.

## B. PROCEDURAL AND FACTUAL BACKGROUND

The motion before us was filed on April 12, 1990. Thereafter, subsequent to notice upon interested parties, including all known creditors, we entered the following:

### ORDER FOR DISMISSAL

AND NOW, this 5th day of JUNE, 1990, upon Joint Motion of the Debtor and Stanton Miller, Petitioning Creditor, for Order Dismissing the within proceeding, and after notice and hearing, at which no opposition thereto was raised; it is

ORDERED that, upon payment by the Debtor of all quarterly fees due and owing the Office of the United States Trustee, the within Chapter 11 case be and it is hereby DISMISSED; and it is further

ORDERED that the Debtor has not waived its rights to damages caused by the filing of the within proceeding.

A hearing on the instant motion was scheduled on July 10, 1990, by what we believed was the agreement of the parties. On July 10, 1990, only IMAC and its counsel appeared, due to what we ultimately determined was an error in communications between the offices of IMAC's bankruptcy counsel, Jonathan Ganz, Esquire ("Ganz"), and Caplan. The matter was then sched-

Jonathan Ganz, Astor, Weiss & Newman, Philadelphia, Pa., for debtor.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

Richard L. Caplan, Philadelphia, Pa., for petitioning creditor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION

The instant proceeding is before us on a motion by the former Debtor in this involuntary bankruptcy case, International Mobile Advertising Corp. ("IMAC"), for the imposition of damages, pursuant to 11 U.S.C. §§ 303(i)(1), (2), against the sole petitioning creditor, Stanton Miller ("Miller"); and for monetary sanctions against Miller and his counsel, Richard L. Caplan, Esquire ("Caplan"), pursuant to Bankruptcy Rule 9011 ("R. 9011"). The claim stems from Miller's filing of the involuntary petition in

uled and ultimately heard on a must-be-tried basis on July 17, 1990.

James C. Schwartzman, Esquire ("Schwartzman") who, with his law partner, Michael B.L. Hepps, Esquire ("Hepps"), are the principals of IMAC, testified at trial, as did Caplan himself. A pre-trial deposition of Miller was added to complete the record.

After the hearing, in light of Schwartzman's testimony that IMAC's damages should include compensation for his firm's services occasioned by the filing of the instant involuntary petition as well as those of Ganz, we entered an Order requesting the following post-trial submissions:

a. The Debtor, Application for any counsel fees sought by the Debtor's counsel and principals in procedural conformity with *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr.E.D. Pa.1987), and a Brief in support of the Motion on or before July 31, 1990.

b. The Defendant, a Reply to the foregoing on or before August 10, 1990.

Nevertheless, only Ganz filed an itemization of his services and expenditures, and these extended through only July 17, 1990, excluding time spent on the post-trial submissions.

The record established that IMAC, despite its cosmopolitan name, was engaged in but one line of business, the sale of advertising space on jitney buses operating in Atlantic City, New Jersey. Miller, the sole petitioning creditor, had been associated with the vendor of the business to IMAC and, pursuant to the terms of the agreement of sale, was to be employed subsequent to the sale as a "consultant" by IMAC. He claimed that IMAC failed to abide by the terms of his consulting contract and that he was consequently owed approximately $100,000 for his services.

In early 1990, Miller became aware that IMAC had sought the restructuring of payments to one of its other creditors, the Atlantic City Jitney Association, and had failed to make payments for several months to another creditor, the Hosiery Corporation of America. Due to an apparent dispute over the terms of Miller's contract, no payments were made to him by IMAC for several months. Miller believed that Schwartzman and Hepps were siphoning off the Debtor's assets for their own personal benefit. Reflective of this concern, Miller felt it necessary to file an involuntary petition against IMAC to protect his interest as a creditor from what he perceived as the dissipation of IMAC's assets.

Miller's counsel was Caplan, who had previously worked as an associate in the law firm of Schwartzman and Hepps ("the Firm"). Caplan had left the Firm under less than amicable terms and the ongoing differences between these parties was obviously the flame which ignited this controversy. Miller is, as IMAC repeatedly emphasized, a felon convicted of several charges, including perjury.

In any event, on March 23, 1990, Caplan wrote to Schwartzman, advising of his intent to file the instant involuntary case and enclosing a draft of the proposed involuntary petition. Schwartzman responded with a letter of March 26, 1990, to Caplan which denied the various allegations contained in the petition, including the allegation that IMAC had less than twelve creditors, and that hence Miller was entitled to file the petition as the sole petitioner under 11 U.S.C. § 303(b)(2). The letter further contended that the reason that Miller had not been paid was because his claim was the subject of a legal dispute. However, no documents or other enclosures supporting the averments in the letter were supplied.

Allegedly because of the absence of such documentation, Caplan proceeded to file the involuntary petition on March 29, 1990. Shortly thereafter, Caplan contacted Ganz and expressed his willingness to dismiss the petition if Ganz could provide records supporting the assertions made by Schwartzman regarding the number of creditors of IMAC in Schwartzman's March 26, 1990, letter. No documents were provided at this juncture, however, and dis-

covery on the merits of the petition commenced.

On April 26, 1990, during the course of depositions of Schwartzman and Miller, Caplan was provided by Ganz with accounting records supporting the statements made by Schwartzman regarding IMAC's other creditors which were in the March 26, 1990, letter. As a result of these revelations, Caplan agreed, on the spot, to the filing of a Joint Motion for Dismissal of the case which resulted in our Order of June 5, 1990, reproduced at page 155 *supra.*

In his testimony, Schwartzman alluded to several aspects of damages caused to IMAC as a result of the short-lived bankruptcy filing. These were the alleged loss of an opportunity to place advertising on rolling chairs on the Atlantic City Boardwalk; being required to liquidate the balance of IMAC's principal business loan; a general loss of IMAC's previously good business reputation; and expenditure of resources of the Firm valued in excess of $12,000 to defend against the petition. However, no documentary or third-party testimonial evidence was presented to support or quantify these alleged elements of damage. As we noted at page 156 *supra,* only Ganz supplied time records despite our specific request for same from "principals" of IMAC, which obviously included Schwartzman and Hepps, in our Order of July 18, 1990.

1. **11 U.S.C. § 303(i) DOES NOT APPLY HERE, BECAUSE .THE COURT DISMISSED THE PETITION UPON THE CONSENT OF THE SOLE PETITIONER AND THE DEBTOR.**

The instant motion is based principally upon 11 U.S.C. § 303(i), which provides as follows:

(i) *If the court dismisses a petition under this section other than on consent of all petitioners and the debtor,* and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;  or

(B) a reasonable attorney's fee;  or

(2) against any petition that filed the petition in bad faith, for—

(A) any  damages  proximately caused by such filing;  or

(B) punitive damages (emphasis added).

The post-trial submissions of the parties indicated that both are laboring under the impression that IMAC's express non-waiver of its rights to damages against Miller, as enunciated in the Order of June 5, 1990, allows IMAC to proceed under § 303(i), irrespective of the fact that the case was dismissed on consent of the sole petitioner and the debtor. We cannot agree. The applicable statute clearly provides to the contrary and therefore we are powerless to read it otherwise even in the face of the failure of Miller and Caplan to so argue on their own behalf.

It is clear that there are two requirements which must both be satisfied if the debtor is to successfully invoke § 303(i): (1) an involuntary petition must be dismissed "other than on consent" of all of the petitioners and debtor; *and* (2) the debtor must not waive the right to proceed under that section. The wording of the Order resolves the second prerequisite in IMAC's favor. There is no waiver. However, the entry of that Order does not and cannot satisfy the first prerequisite set forth in § 303(i). The petition *was* dismissed on consent of the only petitioner and the debtor. The wording of the Order of June 5, 1990, does not and could not change this fact.

Assuming *arguendo* that we could find that Miller and Caplan agreed to confer the court with power to invoke § 303(i) against them by agreeing to the terms in the June 5, 1990, Order, or that they waived this defense by failing to argue it in their post-trial submissions, those facts would be immaterial. The parties cannot, by agreement, empower a federal court to hear a matter which it lacks statutory jurisdiction to consider. *See In re Greenley Energy Holdings of PA.,* 110 B.R. 173, 180

**158**

(Bankr.E.D.Pa.1990); and *In re Almarc Corp.*, 94 B.R. 361, 365 (Bankr.E.D.Pa. 1988). Rather, we must satisfy ourselves concerning our jurisdictional powers before considering the merits of a controversy, *see Employees Insurance of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990), and must dismiss a matter improperly put before us *sua sponte* even if the jurisdictional issue is not raised. *See Greenley Energy*, 110 B.R. at 179–80, 184–85.

Moreover, the terms of the June 5, 1990, Order clearly do not reflect any attempt to alter the requirement of § 303(i) that the petition may not be dismissed on consent. It merely addressed IMAC's refusal to waive its right to a judgment under that section.

Therefore, we must decline to consider the Claims of IMAC under 11 U.S.C. § 303(i) on grounds that we lack statutory power, or jurisdiction, to do so.

2. WHILE IMAC MAY PURSUE SANCTIONS AGAINST MILLER AND CAPLAN UNDER R. 9011, WE DECLINE TO FIND SUCH EXTRAORDINARY CIRCUMSTANCES PRESENT HERE AS TO JUSTIFY SUCH SANCTIONS.

■ Despite the inapplicability of 11 U.S.C. § 303(i), the Third Circuit Court of Appeals has made clear that § 303(i) is not the exclusive remedy for claims arising from improper filings of involuntary bankruptcy petitions. *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir.1988). We therefore deem it quite appropriate to consider the merits of IMAC's alternative claims against Miller and Caplan under R. 9011. We might add that IMAC could successfully pursue only Miller under § 303(i), since § 303(i) provides for claims against only petitioners, not against their counsel. On the other hand,

IMAC may pursue sanctions against Miller as well as clearly against Caplan under R. 9011. *See, e.g., Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 193 n. 1 (3d Cir.1988); *In re Geller*, 96 B.R. 564, 569 (Bankr.E.D.Pa.1989); and *In re Haardt*, 77 B.R. 476, 482 (Bankr.E.D.Pa. 1987).

However, as we recently stated in *In re Smith*, 111 B.R. 81, 85 (Bankr.E.D.Pa. 1990),

[i]n the past we have made plain our distaste for use of B.Rule 9011(a) and our belief that it should be very narrowly construed and applied. Thus, in *In re Arena*, 81 B.R. 851, 856–57 (Bankr.E.D. Pa.1988), *citing Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482–85 (3rd Cir.1987), we stated that B.Rule 9011(a) "should be sparingly employed." ... In *In re Elfman*, Bankr. No. 88–12434S (Bankr.E. D.Pa. Sept. 23, 1988) [1988 WL 98776], we stated in a brief, unpublished decision, that we would reserve application of B.Rule 9011(a) for use "only in exceptional circumstances, where counsel's work product is patently frivolous and/or his motivations are improper," Memoranda, slip op. at 2, citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir.1988).

We recognize that we must make two considerations under R. 9011. Firstly, we must examine the subjective motives of the respondents. Secondly, we must also consider whether the respondents' conduct can be justified from an objective vantage point. *See Smith, supra,* 111 B.R. at 86–87; and *Geller, supra,* 96 B.R. at 568. While the objective test can be applied more evenly and with less guesswork than the subjective test, and is, therefore, in our view, the more important of the two, a very strong showing of only one of the two considerations may be sufficient to support imposition of sanctions under R. 9011.[1]

---

**1.** There are clearly similarities between the standards utilized to measure "improper purpose" under R. 9011 and those to measure "bad faith" under § 303(i)(2), assuming *arguendo* that § 303(i) could be applied here. In fact, several courts have expressly held that the subjective and objective tests of R. 9011 should be applied

in assessing liability under § 303(i)(2). *See, e.g., In re Turner*, 80 B.R. 618, 623 (Bankr.D. Mass.1987); and *In re Alta Title Co.*, 55 B.R. 133, 140–41 (Bankr.D.Utah 1985). *Cf. In re Elsub Corp.*, 66 B.R. 189, 194 (Bankr.D.N.J.1986) (two-pronged objective and subjective test should be used in assessing damages under § 303(i)(2)).

Applying the somewhat more significant, objective test, we find that neither Miller nor Caplan fares badly. Miller certainly had some reason to believe that IMAC had no bona fide defense to his claim. He also had reason to believe that IMAC was not paying its debts as they came due and that it had less than twelve creditors.[2] We found no evidence that Caplan acted irrationally in believing Miller, even though Miller was a convicted perjurer. There is no evidence that Miller was in any way untruthful in any of his representations to Caplan in the course of this matter.

We also conclude that Caplan had at least some measure of justification in concluding that the initial failure of Schwartzman or Ganz to document their denials of the contents of the petition rendered these denials to be less than totally acceptable at face value. It was an unusual courtesy on the part of Caplan to supply Schwartzman with a copy of the petition prior to filing. We believe that Caplan's action in filing the petition almost immediately after receipt of Schwartzman's letter was rather precipitous. On the other hand, the impact of this action was offset, to at least some degree, by the willingness of Caplan to dismiss the petition upon receipt of the evidence of the presence of IMAC's additional creditors at the depositions of April 26, 1990. The failure of Caplan to argue the point in his submissions convinces us that the agreement to dismiss the petition consensually was not by design of the anticipated impact of elimination of IMAC's claim under § 303(i), but rather arose from Caplan's timely assessment that the involuntary petition could not be successfully pursued.

In applying the subjective test, we are compelled to acknowledge that Caplan bore some degree of personal animosity towards Schwartzman and Hepps, and that this

However, one difference between R. 9011 and § 303(i) is that § 303(i) is clearly a fee-shifting statute, while R. 9011 is not. *See Geller, supra,* 96 B.R. at 569. Therefore, the sanctions provided under R. 9011 may be different and of lesser financial impact than damages awarded under § 303(i). Nevertheless, we note that the courts have frequently found that only nominal damages were proven and hence can be awarded under § 303(i)(2) even where bad faith of the petitioning creditors was found. *See In re Advance Press & Litho, Inc.,* 46 B.R. 700, 706–07 (D.Colo.1984) ($240 damages awarded against petitioner acting in bad faith); *In re Fox Island Square Partnership,* 106 B.R. 962, 970–71 (Bankr.N.D.Ill.1989) (only $500 punitive damages awarded); *In re Godroy Wholesale Co.,* 37 B.R. 496, 500–01 (Bankr.D.Mass.1984) (only $250 punitive damages awarded); *In re Camelot, Inc.,* 25 B.R. 861, 865–69 (Bankr.E.D.Tenn. 1982) ($100 actual and $1,000 punitive damages awarded); and *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 101 (Bankr.S.D.Fla.1981) (no actual or punitive damages awarded). *But see In re Wavelength, Inc.,* 61 B.R. 614, 620–22 (Bankr. 9th Cir.1986) (award of punitive damages of $10,000 and most of almost $47,000 in attorneys' fees affirmed); *In re Better Care, Ltd.,* 97 B.R. 405, 416 (Bankr.N.D.Ill.1989) (punitive damages of $5,000 and damages including attorney's fees of over $54,000 awarded); *In re Petrosciences International, Inc.,* 96 B.R. 661, 665–66 (Bankr.N.D.Tex.1988) (punitive damages consisting of forgiveness of a $19,241.04 debt of the debtor to the petitioning creditor and $10,000 punitive damages awarded); *In re Laclede Cab Co.,* 76 B.R. 687, 693–94 (Bankr.E.D.Mo.1987) (punitive damages of $15,000 awarded); and *In re McDonald Trucking Co.,* 76 B.R. 513, 517–20 (Bankr.W.D.Pa.1987) (only portion of actual damages allowed, plus $500 punitive damages). All of the courts in the foregoing cases did award the respective debtors their costs and reasonable attorneys'· fees under § 303(i)(1). While awards under § 303(i)(1) are not automatic even when an involuntary petition is dismissed, *see In re Reid,* 854 F.2d 156, 159 (7th Cir.1988), some courts have labelled such awards as "routine." *See In re Leach,* 102 B.R. 805, 808 (Bankr.D.Kan.1989); and *In re Johnston Hawks, Ltd.,* 72 B.R. 361, 365 (Bankr.D. Haw.1987).

We note that IMAC made a very weak showing of actual damages other than those itemized by Ganz in his post-trial submission for attorneys' fees and costs up to July 17, 1990, in the amount of $6,086.85. *Cf. In re Orsa Associates, Inc.,* 106 B.R. 418, 423–28 (Bankr.E.D.Pa.1989) (attorneys' fees and costs must be itemized and documented pursuant to *Meade Land, supra;* and *Mayflower Associates, supra,* to be passed through to other parties). It is therefore unlikely that IMAC would have been awarded more than the sum requested by Ganz in any event. *Cf. In re Schiliro,* 64 B.R. 422, 426 (Bankr.E.D. Pa.1986) (sole petitioning creditor who was found to have been careless in filing an involuntary petition was assessed with only attorneys' fees and costs).

2. We are not prepared to adopt Schwartzman's contention that all entities to which the debtor regularly made payments, including utility services, even if current, should be considered as holders of claims against IMAC for purposes of § 303(b)(2).

factor may have influenced the rather pre-cipitous filing of this petition. However, the pre-filing dispatch of the petition to Schwartzman and Caplan's willingness to dismiss the petition in the course of the depositions are mitigating factors suggesting that Caplan's professional perspective was not totally clouded by his personal dislike of the principals of IMAC.

We therefore conclude that the instant factual matrix, like that in *Smith, supra,* does not present the sort of "exceptional circumstances" which would render the invocation of R. 9011 appropriate. The work product of Caplan was not "patently frivolous" nor were his "motivations" proven to be "improper." Relief in favor of IMAC under R. 9011 therefore cannot be granted against either Caplan or against his client Miller.[3]

## C. CONCLUSION

An Order denying IMAC's motion must therefore be entered.

---

**3.** As we indicated at pages 158–59 n. 1 *supra,* the only relief to which IMAC would have been entitled to under 11 U.S.C. § 303(i) in any event, if it were applicable, was attorneys' fees and costs to Ganz of $6,086.85.