**In re Morris, Joel and Lillian GELLER t/a M.B. Geller & Son, Debtors.**

**In re Morris B. GELLER, Debtor.**

**Bankruptcy Nos. 84–01811K, 85–01170K.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 18, 1987.

Stuart A. Eisenberg, Philadelphia, Pa., for debtors.

Irv Ackelsberg, Alan M. White, Philadelphia, Pa., for Tenants.

James J. O'Connell, Philadelphia, Pa., Trustee.

Barnett Satinsky, Marjorie McMahon, Philadelphia, Pa., for Acacia Mutual Life Ins. Co.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The matters presently before the Court in these cases are Objections of a creditor and the Trustee to a Stipulation of Dismissal entered into between the Debtors and several of their creditors, who are former tenants of the Debtors whom we shall refer to herein as "the Tenants." After considering several of the ironies which pervade disposition of motions to voluntarily dismiss Chapter 7 and Chapter 11 cases generally and these cases in particular, we conclude that, since we believe that Motions to voluntarily dismiss voluntary bankruptcy cases should be liberally granted, we should approve the Stipulation, with several caveats.

The first of these two matters is a voluntary Chapter 11 case filed by MORRIS GELLER (hereinafter referred to as "Morris"), JOEL GELLER (hereinafter referred to as "Joel"), and LILLIAN GELLER (hereinafter referred to as "Lillian") as a partnership trading as M.B. GELLER &

SON, on June 5, 1984. The second is a voluntary Chapter 7 case filed by Morris only on March 29, 1985. By Order of June 12, 1985, the two cases were directed to be jointly administered. Appointed also Trustee in both cases was James J. O'Connell, Esquire, at that time also the Philadelphia Standing Chapter 13 Trustee.

The Gellers are landlords who have repeatedly resorted to the bankruptcy court in times of crises. The Tenants advise us of seven filings prior to the two at hand, and we are aware of a tenth filing, a Chapter 13 case filed by Lillian on January 30, 1987, and already dismissed by us on May 5, 1987, due to her failure to file any of the necessary papers due after the filing of a Petition and List of Creditors.

Numerous motions and adversarial cases were initiated against the Debtors throughout the course of these proceedings, including the following:

1. Adversarial proceedings, in both cases, by the objecting creditor, ACACIA MUTUAL LIFE INSURANCE CO. (hereinafter referred to as "Acacia"). These were resolved by a default in the Adversary proceeding in the Chapter 11 case, Adversary No. 84–1257; and an agreement between Acacia and the Debtors that the debts to Acacia were non-dischargeable and the liens of Acacia against the Debtors' properties were valid in the Adversary proceeding in the Chapter 7 case, Adversary No. 85–0772.

2. Vigorous interrogation of Morris at meetings conducted pursuant to 11 U.S.C. § 341 by the Tenants' counsel, which led to the filing, by the Tenants' counsel, in September, 1986, of both a Motion to convert the Chapter 11 case to one pursuant to Chapter 7, and a Motion to compel Morris to answer certain questions and produce certain documents which he declined to do at the § 341 meetings.

3. Adversary cases by the Trustee to require the Debtors to turn over certain books and records, at Adversary No. 86–0008, which was apparently ultimately resolved in some fashion not disclosed by the record, and a Complaint pursuant to 11

U.S.C. § 363(h), at Adversary No. 86–0488, against Morris and Lillian, to partition and sell certain of the partnership's property.

On October 2, 1986, the Tenants' two Motions, the Trustee's § 363(h) Complaint, and a Motion for relief from the automatic stay filed by one Bruce Rosenberg, a mortgagee, all came before us for disposition. At that time, all of the parties present, including not only Morris's counsel but Morris himself, reported to us that they had settled all of these matters by the Debtors' agreeing to voluntarily dismiss their cases. The matters were, however, continued until November 20, 1986, for calendar purposes.

On November 20, 1986, we learned that the measures to effect the dismissal, which the Debtors had promised to institute immediately, had not been performed, and we rescheduled the matter for December 17, 1986, stating, in an Order of November 20, 1986, that, if the dismissal were not effected by that date, we would act to enforce the October 3, 1986, agreement ourselves.

On December 17, 1986, the matter was reported as settled; the Stipulation of Dismissal in issue was filed; and we ordered that the Stipulation would be approved if no objections were filed after thirty days' notice to creditors. Unfortunately, a delay in transmission of the Order put off the dispatch of the notice until January 14, 1987. On February 17, 1987, the last day established for such filings, Acacia and the Trustee both filed the Objections which are before us.

In addition to filing on the last day, Acacia allegedly failed to serve its Objections on the Tenants' counsel, and the Tenants' counsel accordingly applied for us to enter the Order approving the Stipulation, erroneously certifying that no objections except that of the Trustee, who merely stated, in two lines, that he objected, without stating any reasons therefor, had been filed. Considering the Trustee's Objection to be without any force, we proceeded to enter the Order approving the Stipulation on March 12, 1987, only to learn that the Objections had been duly listed by the Clerk's Office for a hearing on March 19, 1987.

On March 19, 1987, at the hearing, we strongly urged the parties to amicably resolve this matter, continuing it until March 26, 1987, and quoting to them the discussion of 11 U.S.C. § 707(a) in Collier. 4 COLLIER ON BANKRUPTCY, ¶ 707.03, at 707–7 to 707–8 (15th ed. 1987). Nevertheless, the parties returned on March 26, 1987, without a resolution, and we directed them to simultaneously file Briefs on or before April 16, 1987, supporting their respective positions.

The Stipulation of Dismissal contains an agreement that both of these cases will be dismissed with prejudice and that neither Morris nor Joel nor any partnership nor any corporation in which they are principals will refile a bankruptcy petition for six months; that Morris waives any discharge; that the Debtors will make certain payments to the Tenants and their counsel; i.e., $6,000.00 to the Tenants on or before October 31, 1986, and $2,500.00 in installments thereafter to the Tenants' counsel; and that, upon full payment, the Tenants would release the Debtors and cease their efforts to obtain books and records from the Debtors.

Acacia's Objection and its supporting Brief are only slightly more illuminating than the unimpressive two-line Objection filed by the Trustee. Acacia alleges that the Debtors owe it almost $400,000.00 and that approval of the Stipulation "will pay funds from the estate to certain creditors, thereby precluding equal distribution of funds to all creditors." In its Brief, containing two pages and five lines of "Argument," despite its belated filing on April 20, 1987, Acacia states as follows:

[The Tenants' counsel] represents several of the creditors of Geller. [The Tenant's counsel] has expended considerable time and expenses in order to achieve the aforementioned objective. Their continued efforts to determine assets of Geller's has resulted in Geller's desire to have them removed from the case.

The Dismissal of Geller frees Geller of continued investigation by [the Tenant's counsel], the only creditor [sic] who has

continued its pursuit of an investigation of Geller's assets.

■ Since the Stipulation represented a settlement of a controversy advanced by Debtors, we note, as we discussed at some length in *In re Grant Broadcasting of Philadelphia, Inc.* (Second Opinion), 71 B.R. 390, 395–96 (Bankr.E.D.Pa.1987), that a settlement will be approved as long as it clears a low threshold of reasonability. However, since this particular Stipulation contemplates dismissal of these actions, we are obliged to consider 11 U.S.C. §§ 707(a) and 1112(b), which provide as follows:

Sec. 707. Dismissal

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee....

Sec. 1112. Conversion or dismissal

.     .     .     .     .

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under Chapter 123 of title 28....

■ There is a significant body of caselaw construing § 707(a), and we believe that requests for voluntary dismissals under § 1112(b), concerning which we could find no pertinent cases, should be guided by identical considerations as matters involving § 707(a).

At the outset of our Opinion, we promised that we would consider several of the ironies pervading consideration of motions to voluntarily dismiss Chapter 7 and Chapter 11 cases.[1] One such ironic element is that dismissal is generally the ultimate *penalty* which we impose when a debtor fails to proceed as required by the Code, the Rules, or our Local Rules. In fact, we set out § 707(a) and 1112(b) in full so that this element could be appreciated; it can be observed that these Code provisions are, in substance, a catalogue of debtor's misconduct which can result in dismissal. The power of our Court to impose such a penalty *sua sponte*, as a means of disposing of cases in which the Debtors refuse to proceed properly or expeditiously, was strongly affirmed by this Court's recent decision in *In re Daily Corp.*, 72 B.R. 489, 15 BCD 1024 (E.D.Pa.1987). There, Judge Fox

---

1. We note that voluntary Chapter 13 Debtors have a non-waivable and hence absolute right to a voluntary dismissal of their cases. *See* 11 U.S.C. § 1307(a).

finds that the power to dismiss cases *sua sponte* arises as of necessity, despite its omission from the express language of § 203 of the 1986 Bankruptcy Amendments pending the advent of the United States Trustee in our Courts. We feel that such actions are necessary to remove the large body of deadwood which floats about in the waters of our Court, already clogged by its large volume of live cases.

One irony arises from the observation that, if we were to interpret § 707(a) strictly, we might refuse to dismiss a case on the debtor's own motion where, in the same circumstances and for the same reasons, we would not hesitate to dismiss the case on our own motion or that of an interested party. This state of affairs suggests that a strict interpretation of § 707(a) would foster the perverse notion that quiet defiance of Court directives and rules may get the same dismissal-result for which a straightforward request for dismissal would fail.

The second irony which would be fostered by a strict interpretation of § 707(a) is that, in these times of extreme overload of our bankruptcy courts, our Courts would be placing themselves in the position of imprisoning within our jurisdictional grasp debtors who wish to get their case out of our Court.

Moreover, cases in which something as seemingly innocuous as the debtor's willingness to forego the benefits of the bankruptcy raises a storm of objection tend to be time-consuming and troublesome cases. It seems ironic that the bankruptcy court, forced by the presence of the mass of cases before it to react passively to many matters put before it, should rise with an activist vengeance when a debtor desires release from its jurisdiction, but other interested parties object.

A final irony which would develop from a strict interpretation of § 707(a) would be a blurring of the proper dichotomy between voluntary and involuntary cases. If a case may be voluntarily initiated, as are most cases, it seems logical, or at least symmetrical, to allow a debtor to, in turn, voluntarily dismiss a case. If creditors object to the dismissal, they always have the option of achieving the same result of dragging a debtor into our court by filing an involuntary case after the dismissal of the voluntary one.

■ With cognizance of these ironies which arise if § 707(a) is interpreted strictly, we approach the existing authority regarding what sort of "cause" justifies a voluntary dismissal with a belief that strict interpretation of this Code section would be misplaced and that, generally, a debtor wishing dismissal of a case should obtain this result in all but extraordinary situations.

A threshold issue is the standing of the Trustee to object to a voluntary dismissal. Most of the cases agree that the Trustee unqualifiedly has standing to do so. *See, e.g., Penick v. Tice,* 732 F.2d 1211 (4th Cir.1984); and *In re Hall,* 15 B.R. 913, 915–16 (9th Cir.Bankr.App.1981). A minority of cases hold that the Trustee only has standing to do so to assert his right to collect his statutory fees. *See In re Wolfe,* 12 B.R. 686 (Bankr.S.D.Ohio 1981); and *In re Wirick,* 3 B.R. 539 (Bankr.E.D.Va.1980).

■ We have no doubt that the Trustee is clearly a party in interest and, as such, should generally have a broad right to challenge a debtor's attempt to effect a voluntary dismissal on any ground and for whatever reason that the Trustee deems is appropriate. However, here, the Trustee attended hearings in October, November, and December, 1986, and never voiced any hint of an objection to the dismissal, even when his own adversarial case was rendered moot by the direction of the negotiations and that case was closed. Naturally, the Tenants' counsel, like us, assumed that the Trustee joined in their desire for dismissal of these cases, until the Trustee suddenly changed his position at the last moment. At the hearings on the Objections in March, the Trustee admitted that he filed his Objection only because Acacia had done so, and has never yet articulated one substantive Objection which he himself has to the Stipulation. We do not think that any party, including the Trustee, should base his(her) actions solely on mim-

icry of the actions of a creditor. A Trustee should have reasons of his(her) own for an Objection if (s)he wishes to be taken seriously. Here, we conclude that the Trustee's Objection cannot be taken seriously, was waived by a long series of contrary words and actions, and must be rejected.

■ Acacia's objection must be taken somewhat more seriously. However, even those cases in which a debtor's request for a voluntary dismissal has been rejected upon the objection of a creditor hold that such a request should generally be granted unless some "plain legal prejudice" to creditors will otherwise result. *Hall, supra,* (quoting *In re International Airport Inn Partnership,* 517 F.2d 510, 512 (9th Cir. 1975)); and *In re Kimball,* 19 B.R. 300, 302 (Bankr. D.Me.1982). Nor will the Court always find claims of prejudice articulated by creditors sufficient to block motions to voluntarily dismiss. Rather, as in the leading case which we have found on this subject arising in this Court, the courts will weigh the claims of "plain legal prejudice" by creditors to determine whether this high degree of prejudice exists or whether such prejudice, if it exists, is outweighed by articulated prejudice to the debtor if dismissal is denied. *See In re Heatley,* 51 B.R. 518 (Bankr. E.D.Pa.1985) (per TWARDOWSKI, CH.J.) (desire of debtor to take advantage of opportunity for state homeowners' mortgage assistance benefits outweighs creditor's claim that a refiling and resulting delay would be inevitable, to the disadvantage of these creditors). *See also In re Schwartz,* 58 B.R. 923 (Bankr. S.D.N.Y.1986) (judicial economy in dismissing case after determination that debts are nondischargeable outweighs contentions of two largest creditors that dismissal will result in delay to them in assertion of their rights).

■ While we believe that all creditors and the Trustee should clearly have an opportunity to convince the Court that "cause" in the form of "plain legal prejudice" for refusing to allow a debtor to voluntarily dismiss a bankruptcy case exists, we must confess that, when the ironies which come into play when a court interprets § 707(a) strictly and denies such a motion are considered, we would be hard-pressed to articulate just what circumstances could constitute such "plain legal prejudice," including the consideration of economy and integrity of the Courts, to justify the result of denial of a request to voluntarily dismiss a voluntary case. Hence, we would grant such a motion in all but extraordinary situations.

In its Brief, quoted at page 687 *supra,* Acacia articulates a most unconvincing reason for opposing the dismissal. It borders on the preposterous to suggest that, since other creditors' counsel has taken the laboring oar in pursuing the Debtors, to the potential undeserved benefit of Acacia, counsel should be required, or even expected, to continue to do so.

In the Objection itself, however, Acacia articulates considerations of more merit. It is somewhat disturbing that any creditors, even the possibly long-suffering indigent Tenants of the Debtors, should receive a preference and be "bought off" by the Debtors. If the Debtors did transfer $6,000.00 to the Tenants on or before October 31, 1986, these transfers would appear to constitute post-petition preferences, possibly within the scope of 11 U.S.C. § 549, and, if we allowed the dismissal of the case, the Trustee's right to set aside these transfers would be cut off by operation of 11 U.S.C. § 549(d).

On the other hand, the preference accorded to the Tenants is, in substance, little more of a preference than the Debtors' agreement with Acacia that its debt to them is nondischargeable, which was the resolution of Acacia's own adversarial case effected without so much as notice to the other creditors. Also, there is, from the Tenants' representations, a question as to whether they actually received the promised $6,000.00 and/or the $2,500.00 agreed attorney's fee, and that they still feel that the benefit of getting the Debtors away from the bankruptcy court for a while is worth the bargain. If no sums were received, there would of course be no preferential transfer.

Given our consideration of the several ironies which we would confront if we ruled otherwise and our doubt as to whether Acacia has shown the requisite "plain legal prejudice" arising from the proposed dismissal causes us to overrule these Objections with, however, caveats which we think will protect Acacia from potential prejudice.

Because of our concern about the impact of a dismissal upon the Trustee's rights under § 549, we will give the Trustee fifteen (15) days from the date of this Order to file a Motion pursuant to § 549 if he deems it worth his or anyone else's while to do so.

We are also struck by our observation that a tenth Geller-family bankruptcy has already come and gone since the Stipulation was executed. If we do ultimately approve the Stipulation, which will not occur until the 15–day period established in the foregoing paragraph has expired, we anticipate that we will clarify it to include filings by any of the parties to other of these cases, including Morris, Joel, *or Lillian,* and extending the operative moratorium on Geller bankruptcies for six months from the date that this Stipulation is approved, if applicable. We believe that we should thus define the six-month period because that period since the Stipulation was executed has already run, and, at best, Lillian did not appear to consider herself bound by it while its approval was merely pending before us, as exemplified by her filing of another case in the interim. We will also be prepared to sanction any attorney who undertakes to file another case in violation of this moratorium thereafter. We believe that such sanctioning of any totally bad faith filings would serve the end of conserving the scarce resources of our Court. *See In re Hartford Textile Corp.,* 681 F.2d 895 (2d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

An Order consistent with the conclusions expressed in this Opinion shall issue.

### ORDER

AND NOW, this 18th day of June, 1987, upon consideration of the Briefs of the parties relative to the Objections of Acacia Mutual Life Insurance and the Trustee to the Proposed Stipulation of Dismissal of the above cases, it is hereby ORDERED as follows:

1. Our Order of March 12, 1987, is VACATED, as it was entered upon the erroneous assumption that the Trustee's Objection was the only Objection filed.

2. No action shall be taken on the Motion to reinstate our March 12, 1987, Order, until fifteen (15) days have passed after the entry of this Order to allow the Trustee to file any Motion pursuant to 11 U.S.C. § 549.

3. If no such Motion is filed, the Tenants' counsel or the Debtors' Counsel shall so certify, in order that this Court can approve the Stipulation of dismissal and basically reinstate the Order of March 12, 1987, with the alterations thereto discussed in the foregoing Opinion.

4. The original copy of any Motion filed pursuant to paragraph two of this Order and/or any Certification pursuant to paragraph three of this Order shall be filed with the Clerk of this Court and copies shall be sent to all other opposing counsel listed below *and to the Court.*