**In re Loyd L. KIMBLE, Debtor.**

**Bkrtcy. No. 87–40245.**

United States Bankruptcy Court, D. Montana.

Nov. 23, 1988.

Stephen C. Mackey, Billings, Mont., for Lloyd Kimble—debtor.

Richard Josephson, Big Timber, Mont., for unsecured creditors committee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, Debtor filed a voluntary petition on April 14, 1987, and has served as Debtor-in-possession since that date. Numerous motions for relief from the automatic stay have been filed, and some have been granted. Settlement of a substantial claim with a major creditor, City of Missoula, involving a subdivision in that city has been resolved by compromise under Order of Court of June 22, 1988. On February 1, 1988, the Debtor filed a Disclosure Statement and Plan of Reorganization, which Disclosure Statement was rejected after hearing and ordered to be amended. No amendments have been filed. On September 23, 1988, the Unsecured Creditors Committee filed a

Motion to Convert the case to Chapter 7, or dismiss the case, on grounds there is continuing loss to the estate, unreasonable delay and inability of the Debtor to effectuate a Plan. Such motion was met with the Debtor's Motion for Dismissal of the Chapter 11 case on grounds the Debtor is unable to effectuate a Plan and liquidation of the estate by a Trustee would not be in the best interests of the Debtor.[1]

At hearing on both motions, testimony of the Debtor developed that Debtor has interests in two corporations in which he owns the sole or controlling interest. One company, Hobble–Diamond Cattle Co., is itself in Chapter 11, and owns and operates two cattle ranches in Montana. The other company, Kimble Properties Inc., owns 180 acres of developed subdivision lots in Yellowstone County, Montana. In addition, the Debtor is a party defendant in an interpleader action in state district court which involves a dispute of approximately $336,-000.00, to which action the automatic stay has been terminated to allow that case to proceed in state court. It is not clear as to what administrative expenses remain unpaid, but the attorney for the Unsecured Creditors' Committee has filed an application for award of fees and costs which exceed $20,000.00. The Unsecured Creditors' Committee argues that dismissal of the cause would not be in the best interests of the creditors since they would be sent "headlong into state court to pursue their individual' remedies". Testimony of the Debtor failed to disclose how the Debtor would take care of the unsecured creditors, except that Debtor believed he could work out arrangements with his creditors.

While Debtor opposes liquidation of his assets through Chapter 7, it is interesting to note that his ranch company, Hobble–Diamond, has been actively seeking sale of its real property for well over a year. As noted above, a Plan of Reorganization and Disclosure Statement were filed on February 1, 1988. Hearing on the Disclosure Statement was held on March 15, 1988, and rejection of the Disclosure Statement was

---

1. Debtor contends he is a farmer within the definition of § 101(19) and that conversion to Chapter 7 is improper. In view of the Court's ruling it is not necessary to decide the issue.

entered by Order of April 14, 1988. An Amended Disclosure Statement has never been filed by the Debtor. It is unclear from the evidence whether the Debtor cannot file a confirmable Plan or simply does not desire to do so. Further, since appointment of counsel for the Unsecured Creditors' Committee on June 12, 1987, no Plan of Reorganization has been filed by that Committee, after the Debtor's exclusive filing period of 120 days expired, to liquidate the assets. According to the Debtor, his principal assets in Kimble Properties are not readily saleable due to a depressed real estate market, and it is likely the unsecured creditors believe the same.

Under § 1112 of the Code, the Court may dismiss a case, or convert it to Chapter 7, for cause, when it is in the best interest of creditors. It is clear the Court has wide discretion in acting upon a request for conversion or dismissal. *Matter of Koerner,* 800 F.2d 1358 (5th Cir.1986). In the case *sub-judice,* I am guided in some respect by *In re Geller,* 74 B.R. 685, 688–89 (Bankr. E.D.Pa.1987), which discussed the interplay between Section 707 (dismissal) and Section 1112, and states:

> "There is a significant body of case law construing § 707(a), and we believe that requests for voluntary dismissals under § 1112(b), concerning which we could find no pertinent cases, should be guided by identical considerations as matters involving § 707(a).
>
> At the outset of our opinion, we promised that we would consider several of the ironies pervading consideration of motions to voluntarily dismiss Chapter 7 and Chapter 11 cases. One such ironic element is that dismissal is generally the ultimate *penalty* which we impose when a debtor fails to proceed as required by the Code, the Rules, or our Local Rules. In fact, we set out § 707(a) and 1112(b) in full so that this element could be appreciated; it can be observed that these Code provisions are, in substance, a catalogue of debtor's misconduct which can result in dismissal. The power of our Court to impose such a penalty *sua sponte,* as a means of disposing of cases in which the Debtors refuse to proceed properly or

expeditiously, was strongly affirmed by this Court's recent decision in *In re Daily Corp.,* 72 B.R. 489, 15 BCD 1024 (E.D. Pa.1987). There, Judge Fox finds that the power to dismiss cases *sua sponte* arises as of necessity, despite its omission from the express language of § 203 of the 1986 Bankruptcy Amendments pending the advent of the United States Trustee in our Courts. We feel that such actions are necessary to remove the large body of deadwood which floats about in the waters of our Court, already clogged by its large volume of live cases.

> One irony arises from the observation that, if we were to interpret § 707(a) strictly, we might refuse to dismiss a case on the debtor's own motion where, in the same circumstances and for the same reasons, we would not hesitate to dismiss the case on our own motion or that of an interested party. This state of affairs suggests that a strict interpretation of § 707(a) would foster the perverse notion that quiet defiance of Court directives and rules may get the same dismissal-result for which a straightforward request for dismissal would fail.
>
> The second irony which would be fostered by a strict interpretation of § 707(a) is that, in these times of extreme overload of our bankruptcy courts, our Courts would be placing themselves in a position of imprisoning within our jurisdictional grasp debtors who wish to get their case out of our Court.
>
> Moreover, cases in which something as seemingly innocuous as the debtor's willingness to forego the benefits of the bankruptcy raises a storm of objection tend to be time-consuming and troublesome cases. It seems ironic that the bankruptcy court, forced by the presence of the mass of cases before it to react passively to many matters put before it, should rise with an activist vengeance when a debtor desires release from its jurisdiction, but other interested parties object.
>
> A final irony which would develop from a strict interpretation of § 707(a) would be a blurring of the proper dichotomy be-

tween voluntary and involuntary cases. If a case may be voluntarily initiated, as are most cases, it seems logical, or at least symmetrical, to allow a debtor to, in turn, voluntarily dismiss a case. If creditors object to the dismissal, they always have the option of achieving the same result of dragging a debtor into our court by filing an involuntary case after the dismissal of the voluntary one.

With cognizance of these ironies which arise if § 707(a) is interpreted strictly, we approach the existing authority regarding what sort of 'cause' justifies a voluntary dismissal with a belief that strict interpretation of this Code section would be misplaced and that, generally, a debtor wishing dismissal of a case should obtain this result in all but extraordinary situations."

Further, *Geller* reiterates the long accepted criteria that even in those cases where the Debtor's request for dismissal has been denied over objection of a creditor, the cases hold the Debtor's request should ordinarily be granted unless some "plain legal prejudice" will result to the creditors. *Id.* at 690, citing *In re Hall,* 15 B.R. 913, 915–16 (9th Cir. BAP 1981); *In re International Airport Inn Partnership,* 517 F.2d 510, 512 (9th Cir.1975), and *In re Kimball,* 19 B.R. 300, 302 (Bankr.Me.1982). *Geller,* admits:

"While we believe that all creditors and the Trustee should clearly have an opportunity to convince the Court that 'cause' in the form of 'plain legal prejudice' for refusing to allow a debtor to voluntarily dismiss a bankruptcy case exists, we must confess that, when the ironies which come into play when a court interprets § 707(a) strictly and denies such a motion are considered, we would be hard pressed to articulate just what circumstances could constitute such 'plain legal prejudice', including the consideration of economy and integrity of the Courts, to justify the result of denial of a request to voluntarily dismiss. Hence, we would grant such a motion in all but extraordinary situations."

Thus, plain legal prejudice obviously must be decided on a case-by-case basis.

In reviewing the testimony of the Debtor, and the brief of the Unsecured Creditors' Committee, one must fairly conclude that plain legal prejudice has not been shown or developed. Only if I were to consider the unpaid legal expenses of the Committee, would I concede that prejudice to the attorney may occur, but not plain legal prejudice to the creditors. *See, In re Hall,* supra, where dismissal was reversed when Trustee showed dismissal would allow Debtor's to defeat potential recovery for creditors. No post-petition transfers are alleged, no preferences cited, and no loss to the estate from Debtor's actions are shown by the creditors. Simply to object is not enough. There must be some showing to satisfy the "plain legal prejudice" rule. None has been shown in this case.

IT IS ORDERED the Debtor's Motion to Dismiss this Chapter 11 case is granted and the case is dismissed.