**In re Morris B. GELLER and Lillian Geller, Debtors.**

**Bankruptcy No. 88–12460S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 24, 1989.

Irv Ackelsberg, Community Legal Services, Inc., Philadelphia, Pa., for tenants.

Stuart A. Eisenberg, Philadelphia, Pa., for debtors.

Edward Sparkman, Philadelphia, Pa., Chapter 13 Standing Trustee.

Steven E. Ostrow, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for Pan–Bidd Corp.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us in this matter is a species of motion which we find most distasteful: a motion seeking sanctions against an attorney pursuant to Bankruptcy Rule (hereinafter referred to as "B.Rule") 9011(a), the bankruptcy analogue of Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 11. Even more distasteful is, unfortunately, the sequence of events involving the filings of Morris, Joel and Lillian Geller (hereinafter referred to individually by their first names and collectively as "the Gellers") in our court. We therefore find ourselves constrained to impose sanctions in the form of a fine in the amount of $250.00 against the Gellers' attorney, Stuart A. Eisenberg, Esquire (hereinafter referred to as "Counsel"). We also add sanctions to the Gellers in addition to the 180–day moratorium on further filings by Morris and Joel agreed to by the parties. We direct that Lillian prepare the overdue Schedules and Statements in her current Chapter 7 case within five (5) days and that each of the Gellers make no further filings in this court for two years without first obtaining our express permission to do so.

Our first experience with the Gellers is chronicled in an Opinion reported at 74 B.R. 685 (Bankr.E.D.Pa.1987). There, we dismissed two prior filings, a Chapter 11 partnership filing by all of the Gellers on June 5, 1984 (hereinafter "the 1984 Case") and a Chapter 7 filing by Morris individually on March 29, 1985 (hereinafter "the 1985 Case"). This dismissal was effected pursuant to a Stipulation between the Gellers and several of their creditors, the movants here, whom we designated in our previous Opinion and so shall refer to here as "the Tenants." In that Opinion, we overruled Objections of the Chapter 7 Trustee and another creditor to the Stipulation. In the course of that Opinion, we referred to the fact that the Gellers had made "seven filings prior to the two at hand" and that Lillian had, subsequent to the filing of the 1984 Case and the 1985 Case, filed a new Chapter 13 case (hereinafter "the 1987 Case"). The 1987 case had been filed and dismissed during the time that we had the Stipulation and Objections thereto under consideration. 74 B.R. at 686. At the close of that Opinion, we approved a six-month filing moratorium on further Geller filings, as set forth in the Stipulation, clarifying that it included all three of the Gellers and would run from the date of approval of the Stipulation. *Id.* at 691. We also stated, we hoped ominously, at the close of the Opinion, *id.*, as follows:

We will also be prepared to sanction any attorney who undertakes to file another case in violation of this moratorium thereafter. We believe that such sanctioning of any totally bad faith filings would serve the end of conserving the scarce resources of our Court. *See In re Hartford Textile Corp.,* 681 F.2d 895 (2d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

The instant case involves a filing made by the Debtors on July 11, 1988, shortly after the expiration of the moratorium.[1] Counsel, who is the target of the instant motion, was also the Debtors' attorney in the 1984 case, the 1985 case, and the 1987 case. The instant filing was a joint petition of Morris and Lillian, who apparently are the parents of Joel, pursuant to Chapter 13 of the Bankruptcy Code.

On November 17, 1988, the Tenants filed the motion before us, seeking dismissal of this case, a further moratorium on filings by the Debtors therein, and sanctions against Counsel under B.Rule 9011(a). The Debtors did not file an Answer to the motion. On December 15, 1988, the designated hearing date, only the Tenants' lawyer appeared. We proceeded to dismiss this case, but, at the request of the Tenants' lawyer, we also continued the hearing on the requests for other relief, including Rule 9011(a) sanctions, until January 19, 1989. We also entered an Order directing that Counsel appear at that hearing. At the request of Counsel, this hearing was continued until February 9, 1989.

Disregarding the warning implicit in our actions in the December 15, 1988, Order, Counsel saw fit to file *another* case, a Chapter 7 case on behalf of Lillian only on January 6, 1989. This filing was permissible at all only due to our dismissal of the instant case.

On February 9, 1989, the Tenants' lawyer; an attorney representing Pan–Bidd Associates (hereinafter "Pan–Bidd"), which had filed a motion for relief from the automatic stay in Lillian's Chapter 7 case which had been scheduled, upon our denial of expedited treatment, on March 2, 1989; and Counsel appeared. The first request of the latter was to continue the hearing so that he could retain his own lawyer. We reminded Counsel that the present date had been selected at his own request and that the nature of the proceedings had been clear to him since at least December 15, 1988, and probably prior to that, upon service of the Tenants' instant motion. The motion for a continuance was therefore denied. Counsel was then called to the stand as his sole witness by the Tenants' lawyer.

In the course of this hearing, it was established that various configurations of the Gellers had filed five bankruptcies between May 2, 1980, and March 31, 1983, all through attorneys other than Counsel. Each of these "early" cases were dismissed for failure to prosecute or similar cause manifesting complete lack of follow-through by the Gellers. The last five, the 1984 Case, the 1985 Case, the 1987 Case, the instant case, and Lillian's pending Chapter 7 case, were all filed by Counsel. Schedules and Statements had been prepared in only one instance, the 1985 Case, which had been consolidated with the 1984 Case. The 1987 case and the instant case were both dismissed for failure to prosecute. No Statements and Schedules had been filed in the current Chapter 7 case of Lillian, nor have they been filed to date, although that it has been pending over forty-five (45) days. *See* B.Rule 1007(c) (time limit for filing Statement and Schedules is 15 days after filing petition). Counsel conceded that all of the filings made by him were timed to stay Pan–Bidd from foreclosing on the property from which the Gellers conducted their real estate business as M.B. Geller & Sons.

Admitted into evidence was an Amended Schedule A–3 (list of unsecured creditors) filed by Counsel in the 1985 Case of Morris, listing his total unsecured debts as $691,227.00. Counsel stated that he had no reason to suspect that any of these debts had been paid as of July 11, 1988, when the instant case was filed, and that it was likely that, if anything, more unsecured debts had accumulated in the intervening time.

The Tenants' grounds for seeking B.Rule 9011(a) sanctions were as follows: (1) All of these filing exhibited a pattern of bad faith, *i.e.*, filings with an exclusive

---

1. Since the Stipulation was not finally entered and effective until August 4, 1987, the moratorium was established at February 5, 1988. The present filing was effected about five months thereafter.

intention of benefiting from the stay and no intention to adhere to the requirements of the Bankruptcy Code; and (2) The July 11, 1988, filing was made with knowledge of counsel that the Debtors exceeded the $100,000.00 unsecured debt limit established by 11 U.S.C. § 109(e). The response of Counsel, on the second point, was that he was unsure as to whether joint obligations could be counted in determining whether the § 109(e) ceiling had been exceeded.

B.Rule 9011(a) provides as follows:

Rule 9011. Signing and Verification of Papers (a) SIGNATURE. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. *The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.* If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. *If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or*

*both, an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee (emphasis added).

In the past, we have made plain our distaste for use of B.Rule 9011(a) and our belief that it should be very narrowly construed and applied. Thus, in *In re Arena,* 81 B.R. 851, 856–57 (Bankr.E.D.Pa.1988), citing *Gaiardo v. Ethel Corp.,* 835 F.2d 479, 482–85 (3d Cir.1987), we stated that B.Rule 9011(a) "should be sparingly employed." However, even at that, we compared the situation in *Arena* to "an 'abusive multiple-filing situation,' *compare In re Geller,* ..." *Id.* In *In re Elfman,* Bankr. No. 88–12434S (Bankr.E.D.Pa. Sept. 23, 1988) [1988WL98776], we stated, in a brief, unpublished decision, that we would reserve application of B.Rule 9011(a) for use "only in 'exceptional circumstances,' where counsel's work product is patently frivolous and/or his motivations are improper," Memorandum, slip op. at 2, citing *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 99 (3d Cir.1988). We note that the attorney who was the focus of the *Elfman* motion is the same as Counsel here. However, the Elfmans, in contrast to the Gellers, had only been guilty of three questionable filings, and there appeared to be a glimmer of legitimacy in Counsel's efforts in that matter, which recently was vindicated in at least a partial resolution of that matter.

These previous cases involving the Gellers and this particular Counsel, in addition to the language in our earlier *Geller* Opinion, should have been red flags to both the Gellers and Counsel that they had already stepped perilously close to that small category of situations in which we would deem that B.Rule 9011(a) sanctions were likely to be imposed. However, red flags did not deter Counsel from making yet *another* filing on behalf of Lillian, in which necessary papers have *again* not been filed, in the *face* of the further red flag presented by our Order of December 15, 1988. This, we cannot let pass.

In *Pensiero* and *Gaiardo*, the Third Circuit Court of Appeals concluded that it was not appropriate to impose F.R.Civ.P. 11 sanctions. However, in two other cases, *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191 (3d Cir.1988); and *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir.1987), the Court of Appeals concluded that F.R.Civ.P. 11 sanctions *were* appropriate. Moreover, in both of these latter cases, the Court of Appeals emphasizes that the standard of whether certain conduct is actionable under Rule 11 is an objective rather than a subjective one. *Doering, supra*, 857 F.2d at 194; and *Lieb, supra*, 788 F.2d at 151. The *Lieb* Opinion goes on to state that the directive that a court "shall" impose a sanction if conduct is found inappropriate, which appears in B.Rule 9011(a) as well as F.R.Civ.P. 11, is significant, and " 'was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties.' " *Id.* (quoting Kassan; *An Empirical Study of Rule 11 Sanctions* (Fed.Judicial Center 1985)). *Id.* We also note that Judge Fox of this court overcame any reluctance he may have had to impose sanctions upon counsel pursuant to B.Rule 9011(a) in *In re Haardt*, 77 B.R. 476 (Bankr.E.D.Pa.1987).

We believe that the instant July 11, 1988, Chapter 13 filing, made at the time when Counsel was almost certain that Morris' unsecured debts far exceeded the $100,-000.00 limit established in 11 U.S.C. § 109(e), constituted, by any definition, a filing which was illegal under the applicable law. The "explanation" of counsel that he was unsure that joint debts would be counted for purposes of § 109(e) is extremely lame, and has been quickly rejected in the only known cases in which this argument was raised. *In re Marchetto*, 24 B.R. 967, 969 (Bankr. 1st Cir.1982); *In re Cronkleton*, 18 B.R. 792, 793 (Bankr.S.D. Ohio 1982); and *In re Correa*, 15 B.R. 195, 197 (Bankr.D.Md.1981). This "argument," therefore, had no chance of succeeding.

Moreover, we are not willing to grant this "argument" even "pure heart, empty head" status, which itself would not withstand a Rule 11 sanction. *See Lieb, supra*, 788 F.2d at 157. *See also Doering, supra*, 857 F.2d at 195 (sanctions upheld which had been imposed because attorney failed to competently research the law prior to filing). If in fact any significant portion of the $691,227.00 unsecured debt of Morris had been joint with Lillian, it would have been logical to attribute at least half of the joint sum to Lillian. Debts of half of this sum would put both of them well over the § 109(e) limit. The prospect of joint obligations would, therefore, only serve to throw doubt on the propriety of the 1987 Chapter 13 filing on behalf of Lillian.

Sorry to say, we believe that Chapter 13 was utilized by Counsel not because he considered Morris and Lillian eligible for this Chapter in the instant case and, probably, Lillian in the 1987 Case as well, but because he knew that it was easy to get the designated debtors in and then get them out of this Chapter. *See* 11 U.S.C. § 1307(b). No effort at pursuing either of Chapter 13 cases filed was ever made. We therefore have no choice but to label the filing of at least the case in issue as an abusive filing, known by Counsel and probably the Gellers as well, to be unwarranted at law and imposed for an improper purpose. Hence, it is mandatory that we impose sanctions pursuant to B.Rule 9011(a) here. Therefore, we would characterize the subjective status of the Gellers and Counsel as *"impure* heart, empty head."

This result is supported by our observation that the multiple filings made here would have been determined by some courts, in themselves, to have constituted a basis for B.Rule 9011(a) sanctions. The following sanctions pursuant to Rule 9011(a) were imposed by the following courts in the following respective circumstances: *In re Bono*, 70 B.R. 339, 343–46 (Bankr.E.D.N.Y.1987) (three filings, sanctions totaling $900.00 imposed on debtor and $250.00 on attorney); *In re Kinney*, 51 B.R. 840, 846–48 (Bankr.C.D.Cal.1985) (ten filings, sanctions of $2,500.00 imposed on attorney); and *In re Jones*, 41 B.R. 263, 266–68 (Bankr.C.D.Cal.1984) (six filings,

sanctions of $500.00 imposed on debtor and attorney).

The question remaining is what sanctions are appropriate in this case. We note that the Court of Appeals emphasized, in *Doering*, 857 F.2d at 194, that "[f]ee-shifting is but one of several methods of achieving the various goals of Rule 11." Therefore, in that case, the court deemed it relevant to examine the financial ability of the attorney to pay the monetary sanction imposed against him by the district court. *Id.* at 193–97. *Accord, Gaiardo*, 835 F.2d at 483.

 We believe that a B.Rule 9011(a) violation is a matter between the wrongdoer and the court. Other interested parties have an ethical duty to bring violations of this Rule to the court's attention. However, parties filing motions seeking to impose Rule 9011(a) sanctions should not expect, nor will we routinely consider, granting them attorneys' fees as compensation as the normative appropriate sanctions, as we would do under a fee-shifting statute.

We will therefore order that Counsel is to be sanctioned under B.Rule 9011(a) by payment of a fine. The amount of the fine shall be the relatively modest sum of $250.00. However, we shall direct that it be paid to the Clerk in Charge of Bankruptcy Operations rather than to the Tenants' attorney.

We also believe that sanctions are appropriately imposed here against the Gellers, as well as against their Counsel. Clients can be the focus of Rule 11 sanctions as well as their counsel. *See Doering, supra*, 857 F.2d at 193 n. 1; *Gaiardo, supra*, 835 F.2d at 482; *Haardt, supra*, 77 B.R. at 482; *Bono, supra*, 70 B.R. at 346; and *Jones, supra*, 41 B.R. at 268. Rule 9011(a) expressly states that sanctions may be imposed upon "the represented party," *i.e.*, the client-debtor, as well as counsel.

In the instance of considering what sanctions should be imposed upon the Gellers, we follow the suggestion of the Court of Appeals to creatively fashion appropriate non-monetary sanctions. *Doering, supra*, 857 F.2d at 194, and *Lieb, supra*, 788 F.2d at 157. The parties have already agreed to

a six-month moratorium on any further filings by Morris and Joel. We will incorporate this agreement in our accompanying Order. However, in addition, we will direct that Lillian, per Counsel, file the requisite Statements and Schedules in her pending Chapter 7 case, already long overdue, within five (5) days, upon penalty of further sanctions. Finally, we will require any of the Gellers to obtain court permission before they make *any* further filings in any bankruptcy court *over the next two years.* We do not consider this a harsh sanction, given the aggravated circumstances of their continuing abuse of this court over the past eight and a half years. *Compare In re Millers*, 90 B.R. 567 (Bankr.S.D.Fla. 1988) (debtors who failed to file schedules or attend meeting of creditors pursuant to 11 U.S.C. § 341 and who altered their names and their social security numbers in multiple filings were prohibited, apparently unconditionally, from ever filing bankruptcy proceedings again, apparently in any court).

An Order consistent with what we have expressed herein will be entered.