**In re James R. SMITH, Thelma J. Smith, Debtors.**

**Bankruptcy No. 88–13757S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 14, 1990.

Andrea B. Paul and Ronald J. Harper, Philadelphia, Pa., for debtors.

Charles M. Flesch and Michael J. Salem, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

On November 18, 1989, the date of a final continued hearing on confirmation of the Debtor's Chapter 13 Plan of Reorganization and Objections to the Proofs of Claim of the Internal Revenue Service (hereinafter "the IRS"), Ronald J. Harper, Esquire (hereinafter "Harper"), the Debtor's counsel, suddenly moved to dismiss the entire underlying Chapter 13 case. Although recognizing that the Debtors had an absolute right to have their case dismissed under 11 U.S.C. § 1307(b), counsel for the IRS, having spent numerous hours in preparation for the contest on the Objections, requested an opportunity to file a

motion under Bankruptcy Rule (hereinafter "B.Rule") 9011 against the Debtors and their counsel in connection with their pursuit of the Objections through that date. Therefore, although dismissing the case, we directed that the file be kept open until December 31, 1989, to allow the IRS to file such a motion. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97–100 (3d Cir.1988) (Rule 11 motions must be promptly filed, usually before the entry of a final judgment in a contested matter).

On January 2, 1990, the IRS filed its promised B.Rule 9011 motion, seeking no less than $32,673.34 against both Debtors, Harper, and his partner, Andrea B. Paul, Esquire (hereinafter "Paul"). A Declaration of the Director of the IRS' Comptroller Staff calculates the request as the value of 612 hours of services expended by IRS staff attorneys and paralegals, at hourly rates ranging from $65.85 per hour for the most senior attorney to $40.34 per hour for paralegals.[1] The motion came before us for a hearing on February 1, 1990. The IRS presented no testimony, but instead offered into evidence seven volumes of Depositions of, and documents produced by, the Debtors on September 11, 1989, and September 13, 1989, and two boxes containing 254 documents which the IRS had apparently been prepared to place into the record at the hearing of November 18, 1989. Counsel for the IRS and Harper then presented argument on the motion.

We believe that it would be wasteful of the scarce resources of this court to examine the reams of documents produced at the hearing in order to resolve a motion which is ancillary to the substance of this case. Therefore, we will focus solely upon the history of this matter as it has come before us and the allegations contained in the IRS' two supporting Memoranda of Law, the brief Memorandum of the respondents, and the arguments of counsel to assess the substance of the motion.

The Debtors' Chapter 13 case was filed on October 27, 1988. Although Harper is listed as the Debtors' counsel, Paul initially

---

**1.** These rates, particularly for attorneys, are quite modest. It is rare for any attorney in this court to assert an hourly rate lower than $75 per hour.

appeared in this court on behalf of the Debtors. We note that the letterhead of the firm denotes it as Harper & Paul, and only one other attorney, presumably an associate, is named. The firm is thus very small and its office is located not in center city Philadelphia, but in the moderate-income Germantown area of the city. The firm appears to be engaged in a general neighborhood practice. Neither bankruptcy nor taxes are apparently specialties, although Paul occasionally appears before us representing debtors.

On April 27, 1989; July 13, 1989; and August 11, 1989, Objections by the Debtors to Proofs of Claim of the IRS, representing alleged tax liabilities apparently largely based upon 26 U.S.C. § 6672 for the tax years from 1983–86 totalling over $200,000, and successive amendments thereto, were signed and filed by Paul. On July 13, 1989, we approved a Stipulation, executed by Harper, permitting the Debtors to simultaneously pursue these same disputes in the United States Tax Court. At a hearing on the Objections on July 19, 1989, we noted an IRS contention that the amount of the Debtors' alleged tax liability rendered them ineligible for Chapter 13 under 11 U.S.C. § 109(e). We directed the IRS to file any dismissal motion on this basis on or before August 7, 1989, and continued the hearing on the Objections, by agreement of counsel, until September 5, 1989. No motion to dismiss was filed by the IRS by August 7, 1989. We rather reluctantly granted another mutual request of counsel for a continuance of the Objections and confirmation from September 5, 1989, until September 26, 1989. On the latter date, the Debtors requested a further continuance. The IRS opposed the request, but stated that, if a continuance were granted, the trial should be continued for at least 60 days. We then entered an Order of September 28, 1989, scheduling the matter on a must-be-tried basis on November 28, 1989, and requiring certain pre-trial submissions from the parties.

Ironically, on October 16, 1989, the IRS moved to dismiss the case on the basis of 11 U.S.C. § 109(e). After a hearing on November 8, 1989, over the (again ironic) opposition of the Debtors, we denied the motion because, in light of its disregard of the deadline established in our Order of July 19, 1989, and the apparent substantial efforts of counsel to prepare for the imminent hearing of November 28, 1989, the motion was deemed untimely.

The IRS' instant motion, given this background, is based upon the following averments:

1. The Debtors had no real defense to the IRS' claims, and, given the heavy burdens upon them, see In re Green, 89 B.R. 466, 474 (Bankr.E.D.Pa.1988), their Objections were frivolous. The IRS alleges that this became particularly apparent to the Debtor's counsel after their depositions of the Debtors on September 11, 1989, and September 13, 1989, and that the matter should hence have been abandoned at that time.

2. The Debtor's counsel delayed the hearing on these matters by refusing to appear at a deposition on August 17, 1989. The IRS alleges that Paul, who was available for the deposition, advised the IRS that responsibility of the matter had been passed by her to Harper as the firm's "tax expert," and she declined to confirm the scheduling of the depositions until Harper returned from a vacation. The depositions were completed when Harper was available on September 11 and 13.

3. Harper failed to respond to discovery by the due date of November 2, 1989, complying only upon a court directive on a motion to compel discovery on November 21, 1989.

4. Harper failed to notify the IRS in advance of November 28, 1989, that he intended to have the case dismissed, requiring its counsel to travel from Washington with boxes of documents in tow.

Harper's responses to these charges appear to be as follows:

1. He believed and continues to believe that the Debtors have a defense to the IRS' claims. They apparently claim that funds recorded as belonging to the corporation of which they were allegedly responsible persons were merely passed through the cor-

poration in issue as a conduit only. However, given the vigor of the IRS' defense and his clients' inability to produce documentation at the time of the depositions or thereafter, he made the decision not to pursue the matter in this court at this time.

2. His cooperation in rescheduling the depositions when he returned from vacation was adequate.

3. He mailed the responses to discovery to the IRS' counsel in Washington due on November 2, 1989, to the IRS' counsel in timely fashion and that, if they were not received, they must have been lost in the mail. He supplied a second copy of his responses to the IRS at the court's direction on November 21, 1989.

4. He did not think that the request to dismiss would be granted on November 28, 1989, but erroneously assumed that notice and a hearing were required before this could be done. Therefore, he did not intend to effect immediate dismissal of the case and apparently saw no need to advise the IRS of his intentions as a result.

In only one instance has this court ever imposed sanctions upon parties and counsel under B.Rule 9011, in *In re Geller*, 96 B.R. 564 (Bankr.E.D.Pa.1989). In that case, we imposed a $250 fine upon counsel or the Debtor and imposed restrictions on bankruptcy filings by members of a family who had all been warned in the past about misuse of the bankruptcy process and whose counsel, since voluntarily disbarred, had filed a Chapter 13 case even though he had filed Schedules in a previous Chapter 7 case listing debts over the limits of § 109(e). *Id.* at 568–69. In somewhat reluctantly granting this motion, even in the face of these aggravated facts, we synthesized our view of Rule 9011 motions as follows, *id.* at 567:

In the past, we have made plain our distaste for use of B.Rule 9011(a) and our belief that it should be very narrowly construed and applied. Thus, in *In re Arena*, 81 B.R. 851, 856–57 (Bankr.E.D. Pa.1988), citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482–85 (3d Cir.1987), we stated that B.Rule 9011(a) "should be sparingly employed." However, even at

that, we compared the situation in *Arena* to "an 'abusive multiple-filing situation,' compare In re Geller*, [74 B.R. 685 (Bankr.E.D.Pa.1987)]." In *In re Elfman*, Bankr. No. 88–12434S (Bankr.E. D.Pa. Sept. 23, 1988) [1988 WL 98776], we stated, in a brief, unpublished decision, that we would reserve application of B.Rule 9011(a) for use "only in 'exceptional circumstances,' where counsel's work product is patently frivolous and/or his motivations are improper," Memoranda, slip op. at 2, citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir.1988). We note that the attorney who was the focus of the *Elfman* motion is the same counsel here.

█ We agree with the IRS that the dismissal of the Chapter 13 case and the Objections in issue does not vitiate its Rule 9011 motion. *See Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 494–96 (3d Cir.1989). However, the results in *Schering, id.* at 496–500; and another recent Third Circuit Rule 11 decision, *Dura Systems, Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551, 555–58 (3d Cir.1989), indicate that that court has continued the narrow reading of Rule 11 portended in *Gaiardo, supra*, 835 F.2d at 482–86.

█ The IRS' attempt to impose sanctions upon Paul appears misplaced in light of the Supreme Court's recent holding that individual attorneys, not firms, are generally alone liable for Rule 11 sanctions in *Pavelic & Leflore v. Marvel Entertainment Group*, — U.S. ——, 110 S.Ct. 456, 459–60, 107 L.Ed.2d 438 (1989). Paul's only participation in the Debtors' controversy with the IRS was to file the Objections in issue, and turn the matter over to Harper in August, 1989. Her personal involvement was hence completed prior to the allegedly revealing depositions in September, 1989. She apparently played no role in the November, 1989, discovery disputes or the dismissal of the case. Her request that the Debtors' deposition be postponed is in itself clearly insufficient to give rise to any sanctions.

Next, we address the efforts of the IRS to impose sanctions upon the Debtors. While B.Rule 9011 sanctions can be properly imposed upon parties, particularly debtors, as well as their counsel in appropriate cases, *see Geller, supra*, 96 B.R. at 569, we believe that monetary sanctions against debtors should be sparingly applied, *see id.* (only counsel was fined), and that even non-monetary sanctions should be reserved for those situations where the clients have orchestrated or participated in the abuses. *Compare id.;* and *In re Haardt*, 77 B.R. 476, 478 (Bankr.E.D.Pa. 1987). The IRS has not suggested that the Debtors played any role in any wrongdoing other than persisting in maintaining the merits of their claim in the face of contrary documentary evidence. This does not appear a sufficiently "exceptional circumstance" to constitute a basis to impose sanctions upon them. Furthermore, the Debtors are not known to this court as bankruptcy recidivists. We therefore deem any imposition of sanctions against them to be inappropriate.

Finally, we consider the potential liability of Harper. Harper points out, in his Answer to the Motion, that he did not sign the Objections giving rise to IRS' claim. However, he did sign the discovery responses and pre-trial materials and thus we believe that his engagement was within the scope of B.Rule 9011. However, we fail to find that Harper's conduct was substantively "patently frivolous" or that it manifested any improper purpose. The discovery disputes were resolved without our granting sanctions under B.Rule 7037 and Federal Rule of Civil Procedure 37(d). The failure of Harper to notify the IRS of his intentions to dismiss the case on November 18, 1989, was a clear breach of manners. However, given that the IRS had pressed for dismissal three weeks before, it is difficult to see how this disposition can now be claimed to be of great prejudice to the IRS. Such a breach of manners alone should not give rise to B.Rule 9011 sanctions.

Finally, we must address the claim that the Objections were so substantively frivolous as to merit Rule 9011 sanctions.

We perceive no conceivable purpose of the Debtors, Harper, or Paul in the litigation of the Objections other than attempting to prevail on their merits. We cannot say that the defenses asserted were patently frivolous. There is a suggestion that they were playing off the Tax Court forum against their forum in this court. However, by agreeing to allow the Tax Court proceeding to go forward, the IRS acquiesced in the continuation of proceedings simultaneously in two forums. Although the Debtors' inability to produce documentation to support their claim may have proved fatal at trial, documentation is not generally necessary to establish claims or defenses which can be asserted by testimony. *See In re Huderson*, 96 B.R. 541, 550–51 (Bankr.E.D.Pa.), *aff'd*, C.A. No. 89–2152 (E.D.Pa. August 9, 1989).

We recognize that the standards for determining whether counsel's pursuit of causes for his client are not merely subjective but are also objective. *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); and *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1987). However, in our assessment of the motives and standards by which Harper's conduct must be judged, we cannot lose sight of the economics of the matter. Harper works from a small firm located in a moderate-income neighborhood. Chapter 13 practitioners generally and, we suspect, this firm as well, generally charge no more than $1,000 per case for their services in this jurisdiction. *See In re Pendleton*, Bankr. No. 88–13942F, slip op. at 8 (Bankr.E.D.Pa. January 10, 1990). *Compare In re Taylor*, 100 B.R. 42, 46 (Bankr.D.Colo.1989) ($970); *In re Ashton*, 92 B.R. 254, 255 (Bankr.S.D. Ohio 1988) ($650); *In re Richardson*, 89 B.R. 716 (Bankr.N.D.Ill.1988) ($750); and *In re Lopez Rodriguez*, 76 B.R. 252, 254 (Bankr.D.P.R.1987) ($600). Subjectively, it is difficult to conceive of any motivation for Harper's expending any substantial time, not to mention even a tenth of 600 hours, on a matter in a case worth a total of $1,000 in fees unless he believed the matter to have merit. Also, it would be

unfair, in this context, to measure Harper's performance by the standards of a practitioner specializing in tax matters. Paul's references to his expertise in tax matters was presumably relative only to her own lack of experience in this area. From the objective standard of the general practitioner Harper appears to be, the defenses of the Debtors were not, in our view, frivolous. Harper's failure to appraise his inability to prevail on the Objections earlier was apparently costly to him as well as to the IRS, and therefore unlikely to be ulteriorly motivated.

 We therefore are prepared to deny the motion. We do, however, reiterate, contrary to the arguments of the IRS, our statements in *Geller*, 96 B.R. at 569, that B.Rule 9011 is not, in any event, generally to be viewed as a fee-shifting statute in which counsel are automatically entitled to recovery of the value of sums expended in litigating the claim allegedly asserted to be in violation of Rule 11. To be sure, fee shifting is one, but it is only one, of the possible sanctions available to a court. *See Doering, supra,* 857 F.2d at 194; *Gaiardo, supra,* 835 F.2d at 482–83; *Lieb,* 788 F.2d at 157–58; and THIRD CIRCUIT TASK FORCE ON FEDERAL RULE OF CIVIL PROCEDURE 11, RULE 11 IN TRANSITION 36–45, 96 (1989).

Given the economics of Harper's practice, we believe that the IRS' demand for $32,673.34, consisting of compensation for all of the time expended by its legal staff on this matter, was clearly excessive. It was incumbent upon the IRS to measure its opposition and not expend over 600 hours in a matter in which its resources totally overwhelmed the relatively weak resources of the opposition.

If the Debtors' position were really so frivolous as the IRS now contends, then the IRS was clearly "guilty of overkill" in expending anything close to 600 hours on the matter. *See Napier v. Thirty or More Unidentified Federal Agents, etc.,* 855 F.2d 1080, 1093–94 (3d Cir.1988). In fact, the very failure of the IRS to reflect reasonable judgment in its expense of resources and its attempts to bill the Debtors or its counsel for such excesses reflects adversely on the merits of its motion.

An Order denying the motion will be entered.